LEE, C.J.,
for the Court:
¶ 1. Crow’s Sports Center Inc. (CSCI), Lynn Lambert, and Rhonda Lambert (collectively referred to as Appellees) filed suit against Martha Crow (Crow) seeking specific performance of an option-to-purchase agreement. The chancellor found that the option-to-purchase provision of the contract was enforceable and entered an order granting specific performance, as requested by the Appellees. Crow appeals, arguing the chancellor’s grant of specific performance was error because the option-to-purchase provision of the contract failed to include a purchase price. We find the contract is enforceable; however, we reverse and remand for the chancellor to obtain an independent appraisal and conduct a hearing to determine the property’s fair market value.
FACTS AND PROCEDURAL HISTORY
¶ 2. On May 31, 2005, Crow and her husband, Sylvester Crow, entered into a “Second Amended Lease Agreement” (agreement) with the Appellees. The agreement was drafted by Crow’s attorney, and Crow signed the agreement on June 6, 2005. The Appellees signed the agreement on June 2, 2005. The agreement included an option-to-purchase provision, which reads as follows:
15. OPTION TO PURCHASE: At the conclusion of the term hereof or upon the death of Sylvester Crow or Martha Crow, whichever shall occur first, the LESSEES shall have the option to purchase said property for a fair market value as determined by appraisal by a licensed real[-]estate appraiser or such other term as the parties may negotiate between themselves, which option shall be first evidenced by a written notice from LESSEES to the succeeding LESSORS with proof of the appraisal and evidence of the ability to exercise same or with such offer as the LESSEE may choose to make to LESSORS and if less than the appraised value to be then accepted in writing or rejected in writing by the LESSORS within in [sic] sixty (60) days, at which instance the Option shall be for the appraised value and if the LESSEES have not secured an appraisal then LESSOR may do so in substitute same by giving a copy of same to the LESSEES, who shall pay said amount as the sales price unless they reject same within ten (10) days of receipt thereof, at which time the Option to Purchase shall cease and it shall cease if it has not been exercised within the sixty (60) days of the first right of option at the conclusion of the Lease or the death of one of the LESSORS.
¶ 3. Sylvester passed away on April 5, 2010. By letter dated May 25, 2010, the Appellees informed Crow of their decision to exercise the option-to-purchase provision. The Appellees included in the correspondence an appraisal of the property conducted by Grace Long for $47,000, along with evidence of their ability to purchase the property.
¶ 4. On July 18, 2007, Crow had the property appraised for $110,000, and it was re-appraised on June 23, 2010, for $105,000. Because Crow refused to accept the Appellees’ offer to purchase, they filed suit against Crow seeking specific performance of the option-to-purchase agreement between the parties.
¶ 5. The parties stipulated that the issue was whether the option-to-purchase provision was ambiguous and subject to interpretation by the chancellor. On May 20, 2011, the chancellor entered a judgment finding that the option-to-purchase provision was enforceable.
¶ 6. A hearing on the matter was held on July 11, 2011. Crow’s attorney made a proffer, noting the property was appraised *355 for $110,000 on July 18, 2007, and reappraised on June 23, 2010, for $105,000. The chancellor noted his earlier ruling regarding the enforceability of the option-to-purchase provision and stated the following:
The crux of the matter is [the option-to-purchase provision of the contract].... [T]he lessee[s] shall have the option to purchase said property for a fair market value as determined by appraisal by a licensed real[-]estate appraiser. According to even the proffer ..., that compliance has been made by the lessees. That language also contains the disjunctive word “or” such other terms the parties may negotiate between themselves. Even according to the proffer ..., that negotiation has been exhausted, rejected, and not pursued to be-concluded, or satisfied by the parties. Therefore, that disjunctive provision of the contract is out the window.... The court finds that the lessees have complied with this option to purchase under [paragraph] 15, in that they have provided an appraisal by a licensed real[-]estate appraiser for the amount as specified here of $47,000.... The court further finds that the option to purchase ... [was] exercised and properly complied with by the lessees[.] ... [T]he prior judgment of this court [found] that this contract [was] enforeeable[,] [thus] ... the specific performance sought by the lessees in this cause ... is hereby ordered.
¶ 7. The chancellor entered a judgment, which read, in relevant part, as follows:
... Ronald Michael proffered the following:
A letter dated May 25, 2010, to Martha Crow from [the Lessees] notifying of their intent to exercise [their] option to purchase^] an appraisal from Grace Long, a certified appraiser from Iuka, Mississippi!;] and a statement from an Edward Jones account[,] [showing] the [Lessees’] ability to pay the appraised amount.
An appraisal prepared by Hal Hughes, a certified appraiser[,] at the request of [Crow,] indicating a value of $105,000.00.
The Second Amended Lease Agreement dated May 31, 2005.
The [c]ourt does not accept these as evidence to be included into the record unless they were part of the previous proceedings before this [c]ourt that excepts [sic] them for the purpose of a proffer only.
The [c]ourt finds that it is bound by the language contained in the Second Amended Lease Agreement itself, specifically [paragraph] 15[,] which states that the [Lessees] were to tender [the] fair market value[,] as established by a certified appraiser and evidence of the ability to pay that amount. The [c]ourt finds that the [Lessees] have complied with the requirements of the Second Amended Lease Agreement entered into freely and voluntarily by the parties. Therefore, they are entitled to specific performance of the contract.
¶ 8. Crow now appeals the chancellor’s grant of specific performance in favor of the Appellees.
DISCUSSION
¶ 9. In the only issue on appeal, we must determine whether the chancellor erred in enforcing the option-to-purchase provision of the contract. Questions of contract construction are reviewed de novo. McMurphy v. Three Rivers Planning & Dev. Dist., Inc., 966 So.2d 192, 195 (¶ 12) (Miss.Ct.App.2007). “If a contract is determined to be ambiguous, it is reviewed on appeal under a substantial evidence/manifest error standard.” Belager- *356 Price v. Lingle, 28 So.3d 706, 710 (¶ 7) (Miss.Ct.App.2010) (citing Royer Homes of Miss., Inc. v. Chandeleur Homes, Inc., 857 So.2d 748, 752 (¶ 8) (Miss.2003)). “The existence of a contract is a question of fact that is to be determined by a jury, or a trial judge when a trial is conducted without a jury.” Hunt v. Coker, 741 So.2d 1011, 1014 (¶ 6) (Miss.Ct.App.1999).
¶ 10. The existence of a contract is undisputed. Crow argues that the option-to-purchase provision of the contract is unenforceable because it is not sufficiently definite on material terms. Specifically, she argues that the contract fails to state a specific purchase price, which she contends is required for the chancellor to grant specific performance.
¶ 11. A contract’s terms must be definite, and “[wjithout some written evidence of purchase price or a method of determining a purchase price,” the contract is a mere “memorandum of intent.” Duke v. Whatley, 580 So.2d 1267, 1273-74 (Miss.1991). In this case, the option-to-purchase provision states that the Appel-lees “have the option to purchase said property for a fair market value as determined by appraisal by a licensed real[-]estate appraiser....”
¶ 12. Here, there was no stated purchase price, but there was a clear method of determining one. The contract states that the option to purchase the property is for the fair market value. However, the chancellor did not follow the proper method of determining the purchase price. Instead, he arbitrarily found that the lowest appraised price of $47,000 submitted by the Appellees was the fair market value, even though two other appraisals found the property to be worth $110,000 in 2007 and $105,000 in 2010, both more than twice the appraisal submitted by the Appellees.
¶ 13. The chancellor failed to make any finding on the record regarding Hughes’s valuation of $105,000 in comparison to Long’s $47,000 valuation. Additionally, the record is silent as to the chancellor’s consideration of the differing contents of the appraisals. As an example, Long’s appraisal did not include the gas pumps, canopy, concrete pad, storage building, or central heat and air system; Hughes’s valuation did. Such disparity in the appraisals requires the chancellor to consider all relevant valuations of the property to determine the accurate fair market value.
¶ 14. When an appellate court reviews a contract, it “should seek the legal purpose and intent of the parties from an objective reading of the words employed in the contract.... ” Royer Homes of Miss., Inc., 857 So.2d at 752 (¶ 9). The intent of the parties is clear. They intended to sell and purchase the property for the fair market value as determined by a licensed real-estate appraiser. In this case, two appraisals are more than twice the amount of the third. One would think that qualified licensed professionals would not be so far apart on the valuation of property. Otherwise, the implication is that the appraisers have submitted appraisals that favor them respective clients, as opposed to a true fair market value.
¶ 15. Because of such disparities among the valuations, the chancellor should obtain an independent appraisal and conduct a hearing to determine the property’s fair market value, giving both parties an opportunity to submit testimony and evidence. We remand this issue for further proceedings consistent with this opinion.
¶ 16. THE JUDGMENT OF THE PRENTISS COUNTY CHANCERY COURT IS REVERSED, AND THIS CASE IS REMANDED FOR FURTHER PROCEEDINGS CONSISTENT WITH THIS OPINION. ALL COSTS OF THIS *357 APPEAL ARE ASSESSED TO THE APPELLANT.
ISHEE AND CARLTON, JJ., CONCUR. GRIFFIS, P.J., BARNES AND MAXWELL, JJ., CONCUR IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION. RUSSELL, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION, JOINED BY IRVING, P.J., ROBERTS AND FAIR, JJ.