## IN THE SUPREME COURT OF MISSISSIPPI

## NO. 2012-CT-01441-SCT

*GARRETT J. PRESTENBACH, JR. AND IRENE E.
PRESTENBACH*

*v.*

*J. GERALD COLLINS*

### ON WRIT OF CERTIORARI

DATE OF JUDGMENT:               08/27/2012
TRIAL JUDGE:                    HON. JOHNNY LEE WILLIAMS
TRIAL COURT ATTORNEYS:          L. CLARK HICKS, JR.
                                SAMUEL STEVEN McHARD
COURT FROM WHICH APPEALED:      MARION COUNTY CHANCERY COURT
ATTORNEYS FOR APPELLANT:        L. CLARK HICKS, JR.
                                R. LANE DOSSETT
ATTORNEY FOR APPELLEE:          SAMUEL STEVEN MCHARD
NATURE OF THE CASE:             CIVIL - REAL PROPERTY
DISPOSITION:                    REVERSED AND REMANDED - 10/23/2014
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**EN BANC.**

**DICKINSON, PRESIDING JUSTICE, FOR THE COURT:**

¶1.    We granted certiorari in this case to correct a fundamental misunderstanding of the

law on option contracts and specific performance.  The option holder timely exercised his

option to purchase and is entitled to specific performance, so we reverse and remand.

### FACTS AND PROCEDURAL HISTORY

¶2.    On September 15, 2011, Gerald Collins granted Garrett Prestenbach a one-year option

to purchase about 150 acres of Collins's farm and pasture land for $500,000.  Prestenbach

agreed to make a $25,000 down payment on the property and finance the remaining $475,000 through a combination of a $225,000 USDA loan and $250,000 financing agreement with Collins. The parties signed the financing agreement that same day.

¶3.     The option contract included the following details: (1) a recital of $100 consideration; (2) a township-and-range description of the property; (3) a reference to the buyer's intent to obtain a USDA loan; (4) the total purchase price; and (5) a recital that the option was irrevocable for the first three months and, after three months, the option could be revoked by giving ten days' written notice. The parties also agreed that Collins would allow the USDA to inspect the property before closing.

¶4.     About a month after giving Prestenbach the option to purchase his land, another buyer offered to buy Collins's property immediately. Collins attempted to persuade Prestenbach to give up his option so he could sell to the other party, but Prestenbach refused and quickly recorded the option contract to prevent the sale.

¶5.     By early December, relations between Collins and Prestenbach had deteriorated. On December 8, 2011, Collins's attorney sent Prestenbach a letter attempting to terminate the one-year option "upon the latter to occur of December 15th, its date of expiration, or ten (10) days after receipt of this notice." Prestenbach responded on December 16, 2011, by hand-delivering a letter exercising his option to purchase. At that time, the USDA loan process was nearly complete, and on December 22, 2011, the USDA conditionally approved Prestenbach's loan.

¶6.     Prestenbach tried to set a closing date for the loan, but Collins refused to move forward with the closing. Claiming that the option to purchase had been terminated, Collins

2

denied the USDA's request to inspect the property. He then filed a quiet-title action against Prestenbach. Prestenbach filed an answer and a counterclaim for specific performance, stating he was "ready, willing, and able" to close the deal. Both parties filed motions for summary judgment. The chancellor granted Collins's motion for summary judgment and denied Prestenbach's motion, finding that Prestenbach was not entitled to specific performance because, at the time he exercised his option, he could not pay the entire $500,000 purchase price. Prestenbach appealed.

¶7.     The Court of Appeals affirmed the chancellor's judgment finding that Prestenbach was not entitled to "specific performance of [the] option contract," because, when he exercised his option, he "indisputably lacked the financing to purchase the property."[1] We then granted Prestenbach's writ of certiorari.

### ANALYSIS

¶8.     The real-property option contract before us clearly provided how the option was to be exercised, and that a closing of the transaction would take place at some point following the exercise of the option. It further provided that "the purchase price shall be paid at the time of recording of [the] deed," and that taxes and other assessments would be prorated "as of the date of the closing of the transaction." So, while the contract required Prestenbach to pay the purchase price at "the closing of the transaction," nothing in the contract suggests that he was required to pay—or demonstrate his ability to pay—the purchase price prior to closing.

---

[1] *Prestenbach v. Collins*, No. 2012-CA-01441-COA, 2013 WL 6231798, at *1 (Miss. Ct. App. Dec. 3, 2013).

3

¶9.    While an option contract is not a contract to sell, it morphs into a sales contract when the option holder exercises the option.[2] When the option holder exercises the option "the option-giver has no choice but to sell when the option is accepted according to its terms."[3] A valid and enforceable option contract requires: (1) an adequate description of the property, (2) consideration, and (3) a date when the option must be exercised.[4] Property is adequately described in the option if the property to be sold can be reasonably identified.[5]

¶10.    When the option holder exercises the option to purchase, the option holder "is entitled to specific performance of the optionor's duty to convey, so long as the holder is *willing* to pay the option price."[6] If an option subject to financing does not specify when the sale must take place, "the court may decree a reasonable time [for performance]."[7] And where the

---

[2] ***Clinton Serv. Co. v. Thornton***, 233 Miss. 1, 10, 100 So. 2d 863, 867 (1958) (explaining that acceptance of an option contract transforms the option from a unilateral contract to a bilateral contract); *see also* ***Busching v. Griffin***, 542 So. 2d 860, 864-65 (Miss. 1989) (citing ***Holifield v. Veterans' Farm & Home Bd.***, 218 Miss. 446, 450-52, 67 So. 2d 456, 457-58 (1953); ***Hollingsworth v. Bilbo***, 211 Miss. 155, 158, 51 So. 2d 229, 229 (1951)) (noting that acceptance of an option converts the option to an enforceable bilateral contract to sell).

[3] ***Duke v. Whatley***, 580 So. 2d 1267, 1272 (Miss. 1991) (quoting *Williston on Contracts*, § 1441A (Jaeger, 3d ed. 1968)).

[4] ***Creely v. Hoseman***, 910 So. 2d 512, 520 (Miss. 2005) (citing ***Holifield***, 67 So. 2d at 458).

[5] ***Busching***, 542 So. 2d at 864.

[6] ***Id.*** at 864-65 (citing ***Clinton Serv. Co.***, 100 So. 2d at 867) (emphasis added).

[7] ***Leach v. Tingle***, 586 So. 2d 799, 803 (Miss. 1991) (citing ***Hicks v. Bridges***, 580 So. 2d 743, 746 (Miss. 1991); ***Fortune Furniture Mfg., Inc. v. Pate's Elec. Co.***, 356 So. 2d 1176 (Miss. 1978)).

parties fail to include a closing date for the resulting sale, the closing date is "to be within a reasonable time from the date of exercising the option."[8]

¶11.   In this case, Collins and Prestenbach created a valid and enforceable option to purchase real property and Prestenbach timely exercised this option.  When Prestenbach exercised his option to purchase, the option contract became an enforceable contract to sell and Prestenbach had the right to specifically enforce that contract.  In the absence of a definite closing date in the option contract, it must be presumed that the parties intended that the sale would take place within a reasonable time after Prestenbach exercised his option to purchase.  And Prestenbach was required to present himself at the closing with the purchase price as specified in the contract.

¶12.   Absent language in the contract to the contrary, an option holder has no obligation or duty to show an ability to pay the entire sales price before the closing.  Instead, by exercising the option, the option holder becomes bound to purchase the property at the closing, according to the terms of the contract.  Prestenbach was entitled to set a closing date within a reasonable time following his exercise of the option.  He attempted to do so, but Collins refused to cooperate.  Thus, Prestenbach is entitled to specific performance, and the chancellor erred in denying Prestenbach's motion for summary judgment.

**CONCLUSION**

¶13.   Prestenbach is entitled to specific performance of the contract to sell as a matter of law.  We reverse the judgment of the Court of Appeals.  We reverse the chancellor's

---

[8] ***Creely***, 910 So. 2d at 520 (ordering specific performance of an option contract with no specific closing date).

summary dismissal of Prestenbach's claim for specific performance. We remand this case to the chancery court with instructions to the court to render judgment for Prestenbach and to set a reasonable closing date for the sale, taking into account Prestenbach's need, if any, to reapply for USDA financing. As this Court recognized twenty-five years ago, were we to allow a person to "escape [his] obligations under [an] option, the precedent would imperil all contracts where, before performance, one party smelled a sweeter deal."[9]

¶14.   **REVERSED AND REMANDED.**

**WALLER, C.J., RANDOLPH, P.J., LAMAR, KITCHENS, CHANDLER, PIERCE, KING AND COLEMAN, JJ., CONCUR.**

---

[9] ***Busching***, 542 So. 2d at 866.