WILSON, J., FOR THE COURT:
 

 ¶ 1. This case involves an option to purchase in a lease agreement between Terry Lee Ing and Song Adams. Ing gave Adams timely written notice of his intent to exercise the option, but Adams refused to convey the property. Adams subsequently sued Ing for eviction, and Ing counterclaimed for breach of contract. After a bench trial, the circuit court ruled that Ing had forfeited his right to purchase the property because he did not "adequately exercise" the option. The trial court also ruled that Ing was liable for rent for the period after the expiration of the initial lease term. Ing challenges both of these rulings on appeal.
 

 ¶ 2. We hold that Ing took sufficient steps to exercise the purchase option. Once Adams expressly refused to sell the property,
 Ing was not required to tender funds or obtain an appraisal. We also hold that Ing is not liable for rent for the period following Adams's wrongful refusal to convey the property. During that period, Ing was the equitable owner of the property, not a "holdover tenant." Therefore, no "holdover rent" is owed. We reverse and remand for further proceedings consistent with this opinion.
 

 FACTS AND PROCEDURAL HISTORY
 

 ¶ 3. Adams owns a three-level building on West Van Dorn Street on the courthouse square in Holly Springs. Adams owns and operates a liquor store on the main level of the building, and she rents out the upstairs as an apartment. The basement houses Victor's Pizza, a restaurant formerly owned by Adams's husband, Mike. Mike sold Victor's Pizza to Ing.
 

 ¶ 4. On January 26, 2010, Adams and Ing entered into a five-year lease for the basement. The lease agreement required Ing to pay Adams rent of $2,500 per month plus thirty-three percent of the property taxes on the building. The agreement also provided that at the end of the initial five-year lease term, Ing would have "the option to extend the lease for an additional five years or to purchase the building at it's [sic] then appraised value."
 

 ¶ 5. On January 22, 2015, four days before the end of the initial lease term, Ing provided Adams with a signed, handwritten notice of his intent to exercise the purchase option. The notice stated that the purchase price would "be at appraised value as agreed." On January 26, 2015, Adams responded to Ing through a letter from her attorney. Adams acknowledged Ing's desire to exercise the purchase option but expressly stated that she did "not desire to sell the building to [him]." Adams stated that she was willing to continue to lease the basement to Ing but only "on a month to month basis." Adams also alleged that Ing had "committed several [unspecified] violations of the terms of the lease."
 

 ¶ 6. Ing remained in the building and continued to operate Victor's Pizza, but he stopped paying rent. On March 19, 2015, Adams filed a complaint in circuit court for eviction, damages, and other relief. Adams's complaint acknowledged that Ing had given notice of his intent to exercise the purchase option. However, Adams alleged that Ing had "failed to tender any money toward the purchase of the property" and had "made no other overt actions toward purchasing the property." The complaint failed to mention Adams's own refusal, through counsel, to sell the building. Adams also alleged that Ing had committed several violations of the lease, such as operating a gold buying business on the premises, residing on the premises, failing to maintain insurance, and failing to pay his share of the property taxes. The complaint sought damages, a declaration that the lease had terminated and that the purchase option had expired, and an order requiring Ing to vacate the premises.
 

 ¶ 7. Ing answered and asserted a counterclaim. Ing denied that he had breached the lease agreement, he denied that Adams was entitled to damages or any other relief, and he alleged that Adams had breached the agreement by refusing to sell the building. Ing alleged that he had not taken steps to purchase the property only because "Adams ha[d] explicitly stated that she [was] not going to sell him the property."
 
 [1]
 

 ¶ 8. The case proceeded to a bench trial on May 26, 2016. Ing testified that he attempted to exercise the purchase option prior to the expiration of the initial lease term, but Adams refused to sell him the building-both orally and through the letter from her lawyer. Ing also proved that he had insurance and had paid his share of the property taxes. He testified that he had not incurred the expense of an appraisal only because Adams refused to sell him the building. He also testified that he had inquired with banks about a loan to buy the building; however, the banks told him that this litigation needed to be resolved first.
 

 ¶ 9. Adams's husband, Mike, testified that he had obtained an appraisal for the building from a licensed appraiser. The February 2015 appraisal, which was introduced into evidence, estimated the market value of the building to be $350,000. There is no evidence that the appraisal was ever disclosed or provided to Ing prior to trial, and on appeal, Ing denies that it was. On cross-examination, Mike testified that he thought that his wife still "want[ed] to sell" the building to Ing. When asked why, then, her lawyer sent Ing a letter refusing to sell, Mike said, "I may be out of the loop on that."
 

 ¶ 10. Adams's testimony was confusing to say the least. She testified that she was willing to sell the building to Ing, but she thought that Ing would pay her $700,000. Adams did not explain why she thought that Ing would pay her $700,000 other than that she thought her building was "a million-dollar building." When asked why her attorney sent Ing a letter refusing to sell the building, Adams finally said, "I don't know what's going on."
 

 ¶ 11. After both sides rested, Adams's lawyer conceded that his "client [had] just testified that she was still willing to sell the building"; therefore, most of Adams's allegations that Ing had violated the lease "would not matter because [Adams] ha[d] indicated her willingness to sell the building for fair market value consistent with the provisions of the lease."
 

 ¶ 12. The parties' attorneys then debated whether Ing was liable for rent for the period after the expiration of the initial lease term. Ing argued that he was not liable for rent because Adams had breached their agreement by refusing to convey the property. Adams argued that Ing was liable for rent because he had done nothing to purchase the property. The court took the case under advisement.
 

 ¶ 13. The court subsequently entered a final judgment with findings of fact. The court first found that Ing was not in material breach of the lease during the initial lease term; therefore, Ing "had the right to exercise the option to purchase up to January 26, 2015." However, the court also found that Ing "did NOT adequately exercise his option to purchase the property." The court noted that Ing did not tender money to purchase the property or obtain an appraisal. The court next ruled that Ing owed Adams rent of $2,500 per month for each month following the expiration of the initial lease term. Finally, the court ordered Ing to vacate the premises within thirty days. The judgment was stayed pending appeal.
 

 ANALYSIS
 

 ¶ 14. Two issues are before this Court on appeal: whether Ing adequately
 exercised his purchase option and whether he is liable for rent for the period after the expiration of the initial lease term. "The standard of review for a judgment entered following a bench trial is well settled."
 
 Maldonado v. Kelly
 
 ,
 
 768 So.2d 906
 
 , 908 (¶ 4) (Miss. 2000). Any findings of fact made by the trial judge will not be disturbed when "they are supported by substantial, credible, and reasonable evidence."
 

 Id.
 

 However, we review issues of law de novo.
 

 Id.
 

 I. Ing Adequately Exercised the Option to Purchase
 

 ¶ 15. "A valid and enforceable option contract requires: (1) an adequate description of the property, (2) consideration, and (3) a date when the option must be exercised."
 
 Prestenbach v. Collins
 
 ,
 
 159 So.3d 531
 
 , 533 (¶ 9) (Miss. 2014). These conditions are satisfied in this case. There is no dispute as to the property involved
 
 [2]
 
 or that there was consideration. Finally, the lease granted Ing the right to exercise the option "[a]t the end" of the initial lease term, and Ing gave timely notice four days prior to the expiration of the lease term.
 

 ¶ 16. On appeal, Adams briefly argues that option is unenforceable because it fails to specify a sales price. However, this issue was not raised or addressed in the trial court.
 

 ¶ 17. In response, Ing argues that the option is enforceable under this Court's decision in
 
 Crow v. Crow's Sports Center Inc.
 
 ,
 
 119 So.3d 352
 
 (Miss. Ct. App. 2012). In
 
 Crow
 
 , this Court addressed a lease that granted the lessee an option to purchase the "property for a fair market value as determined by appraisal by a licensed real estate appraiser or such other term as the parties [might] negotiate between themselves."
 

 Id.
 

 at 354
 
 (¶ 2) (alteration omitted). The lessor argued the option was unenforceable because it "fail[ed] to state a specific purchase price."
 

 Id.
 

 at 356
 
 (¶ 10). However, this Court disagreed. We held that although "there was no stated purchase price, ... there was a clear method of determining one"-i.e., an appraisal by a licensed appraiser.
 

 Id.
 

 at (¶ 12). Ing notes that the option at issue in this case provides that the purchase price shall be the building's "then appraised value." Ing argues that "appraised value" necessarily implies an appraisal by a licensed real estate appraiser, which we deemed sufficiently definite in
 
 Crow
 
 .
 

 ¶ 18. Given that Adams did not raise this issue in the trial court, we agree with Ing that the price term is sufficiently definite to be enforced. We also note that at oral argument, Ing essentially conceded that he was "stuck" with the $350,000 appraisal presented by Adams at trial since he had not offered a competing appraisal.
 

 ¶ 19. Adams's primary argument on appeal is that the trial court correctly found that Ing failed to take sufficient steps to exercise the option. Adams argues that Ing "made no attempt to have the building appraised," "has not tendered any payment towards the purchase price," and "has given no assurances of his ability to pay." However, once Adams expressly refused to convey the property, Ing was not required to take any of these steps.
 

 ¶ 20. "[W]ritten notice to the seller of intent of the option holder to exercise an option has the effect of an acceptance, converting the option into an enforceable bilateral contract.
 
 It is not necessary for an option holder to tender the purchase price in order to exercise the option
 
 ."
 

 Creely v. Hosemann
 
 ,
 
 910 So.2d 512
 
 , 519 (¶ 29) (Miss. 2005) (emphasis added) (citing
 
 Busching v. Griffin
 
 ,
 
 542 So.2d 860
 
 , 864-65 (Miss.1989) ). Indeed, "[a]bsent language in the contract to the contrary, an option holder has no obligation or duty to show an
 
 ability
 
 to pay the entire sales price before the closing."
 
 Prestenbach
 
 ,
 
 159 So.3d at 534
 
 (¶ 12) (emphasis added). "The holder of an option is entitled to specific performance of the optioner's duty to convey, so long as the holder is willing to pay the option price."
 
 Creely
 
 ,
 
 910 So.2d at 519
 
 (¶ 29).
 

 ¶ 21. Thus, contrary to Adams's arguments, it was not necessary for Ing to tender the purchase price or prove or provide assurances of his ability to pay. The law is clear that Ing's written notice to Adams effectively converted the option into an enforceable sales contract.
 

 Id.
 

 ;
 
 Prestenbach
 
 ,
 
 159 So.3d at 533-34
 
 (¶¶ 10-12). We also hold that Ing did not forfeit his right to exercise the option by not obtaining an appraisal. When Ing attempted to exercise his option, he received a prompt response from Adams's lawyer that Adams did "not desire to sell the building to [him]," and Adams then sued him for eviction. In the face of Adams's clearly stated refusal to honor the option and convey the property, Ing was not required to incur the expense of an appraisal.
 
 See, e.g.
 
 ,
 
 Cooley v. Stevens
 
 ,
 
 240 Miss. 581
 
 , 592,
 
 128 So.2d 124
 
 , 128 (1961) ("The law does not require one to do a vain and useless thing.").
 

 ¶ 22. We hold that Ing's written notice to Adams was sufficient to exercise the purchase option. There was no valid basis for Adams to refuse to convey the property, and Ing was entitled to specific performance of the option to purchase.
 

 II. Ing Does Not Owe Adams "Holdover Rent"
 

 ¶ 23. Adams also argues that the trial court properly ordered Ing to pay rent of $2,500 per month for the period after the initial lease term, which would now amount to approximately $100,000. We disagree. Ing was prevented from purchasing the building because
 
 Adams
 
 breached the parties' contract. Under these circumstances, Ing was not a "holdover tenant," and he was not required to pay holdover rent.
 

 ¶ 24. Two federal district courts have addressed this issue recently. As those courts have held, when a landlord refuses to convey property to its tenant pursuant to a validly exercised purchase option, the tenant is
 
 not
 
 transformed into a "holdover tenant."
 
 Straus v. United States Postal Serv.
 
 , No. 16-4117,
 
 2018 WL 741791
 
 , at *2 (E.D. Pa. Feb. 6, 2018) ;
 
 United States Postal Serv. v. Jamke
 
 , No. 1:15-cv-01806-LJO-EPG,
 
 2017 WL 1650625
 
 , at *3 (E.D. Cal. May 2, 2017). Rather, once the tenant exercises the option, the tenant becomes the "equitable owner" of the property.
 
 Straus
 
 ,
 
 2018 WL 741791
 
 , at *2 ;
 
 Jamke
 
 ,
 
 2017 WL 1650625
 
 , at *3. Under these circumstances, the tenant cannot "be both the rightful owner ... and a holdover tenant."
 
 Jamke
 
 ,
 
 2017 WL 1650625
 
 , at *3. "Thus, no holdover rent [is] due by law, as [the tenant is] the equitable owner of the property and [is] not a holdover tenant."
 
 Straus
 
 ,
 
 2018 WL 741791
 
 , at *2.
 

 ¶ 25. These recent federal district court decisions are consistent with a long line of rulings of other courts.
 
 [3]
 
 They are also
 consistent with this Court's decision in
 
 Fairchild v. Bilbo
 
 ,
 
 166 So.3d 601
 
 , 606-07 (¶¶ 15-16) (Miss. Ct. App. 2015). In
 
 Fairchild
 
 , this Court held that a landlord wrongfully refused to convey property pursuant to the purchase option of a lease-purchase agreement.
 
 See
 

 id.
 

 at 606
 
 (¶ 13). This Court then held that the landlord's refusal to convey the property was a breach of the contract and excused the tenants from their duty to continue to pay rent.
 

 Id.
 

 at 607
 
 (¶ 16) ("Because it was the [landlord] that breached the contract, the [tenants] are not in default for discontinuing their monthly payments.").
 
 [4]
 

 ¶ 26. The result is the same in this case. Following Adams's refusal to convey the property pursuant to the purchase option, Ing was the "rightful and equitable owner" of the property, not a mere "holdover tenant."
 
 Jamke
 
 ,
 
 2017 WL 1650625
 
 , at *3. Ing "could not be both the rightful owner ... and a holdover tenant. This point bears emphasis: at
 
 no point
 
 was [Ing] a holdover tenant."
 

 Id.
 

 "Thus, no holdover rent was due by law, as [Ing] was the equitable owner of the property and was not a holdover tenant."
 
 Straus
 
 ,
 
 2018 WL 741791
 
 , at *2.
 
 [5]
 

 CONCLUSION
 

 ¶ 27. Ing took sufficient steps to exercise the option to purchase and is entitled to specific performance. We therefore reverse and remand this case to the circuit court with instructions to set a reasonable closing date for the sale-taking into account Ing's need, if any, to secure financing-based on the sole appraisal offered at trial.
 
 See
 

 Prestenbach
 
 ,
 
 159 So.3d at 533-34
 
 (¶¶ 10, 13). As the equitable owner of the property, Ing was never a holdover tenant and is under no obligation to pay holdover rent. Therefore, we reverse that part of the circuit court's judgment as well.
 
 [6]
 
 Accordingly,
 this case is reversed and remanded for further proceedings consistent with this opinion.
 

 ¶ 28.
 
 REVERSED AND REMANDED.
 

 LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, GREENLEE, WESTBROOKS AND TINDELL, JJ., CONCUR. CARLTON, J., CONCURS IN PART AND DISSENTS IN PART WITH SEPARATE WRITTEN OPINION.
 

 Ing's counterclaim does not specifically request specific performance, although it does request "any and all additional, general, and/or special relief available to [Ing] at law or in equity which the Court may ... deem appropriate, just, and proper." At trial, Ing testified that he wanted to buy the building in January 2015 and still wanted to buy it. At the conclusion of the evidence, both Adams and Ing moved, without objection, to amend the pleadings to conform to the proof at trial. In the trial court's final judgment, the court treated Ing's counterclaim as including a claim for specific performance.
 

 The parties agree that Ing was granted an "option ... to purchase the building"-i.e., the entire building, not just the basement, which was the subject of the lease.
 

 See, e.g.
 
 ,
 
 United States v. Turley
 
 , No. 15-CV-78-JHP,
 
 2016 WL 8671924
 
 , at *11 (E.D. Okla. Nov. 18, 2016),
 
 aff'd
 
 ,
 
 878 F.3d 953
 
 (10th Cir. 2017) ;
 
 United States v. Americo Fisco Revocable Tr.
 
 , No. 1:14-cv-2579,
 
 2016 WL 4565470
 
 , at *6 (N.D. Ohio Aug. 31, 2016) ;
 
 United States v. Bethlehem Steel Co.
 
 ,
 
 215 F.Supp. 62
 
 , 71-72 (D. Md. 1962) ("The cases hold that where there has been an effective exercise of an option by the purchaser's giving proper notice, followed by a delay on the part of the seller in consummating the transaction, the seller may not recover rent for the intervening period ...."),
 
 aff'd
 
 ,
 
 323 F.2d 655
 
 (4th Cir. 1963) (per curiam);
 
 Sacks v. Hayes
 
 ,
 
 146 Cal.App.2d Supp. 885
 
 ,
 
 304 P.2d 281
 
 , 282 (Cal. Super. Ct. App. Dep't 1956) ;
 
 Cities Serv. Oil Co. v. Viering
 
 ,
 
 404 Ill. 538
 
 ,
 
 89 N.E.2d 392
 
 , 402 (1949) ;
 
 Rosenthal v. Shapiro
 
 ,
 
 333 Mich. 302
 
 ,
 
 52 N.W.2d 859
 
 , 861-62 (1952) ;
 
 Shupe v. Ham
 
 ,
 
 98 Nev. 61
 
 ,
 
 639 P.2d 540
 
 , 543-44 (1982) ;
 
 Chapman Drug Co. v. Chapman
 
 ,
 
 207 Tenn. 502
 
 ,
 
 341 S.W.2d 392
 
 , 397 (1960) ;
 
 Pitman v. Sanditen
 
 ,
 
 626 S.W.2d 496
 
 , 497-98 (Tex. 1981).
 

 The partial dissent's reliance on
 
 Murphree v. Aberdeen-Monroe County Hospital
 
 ,
 
 671 So.2d 1300
 
 (Miss. 1996), is misplaced.
 
 Murphree
 
 did not have anything to do with a purchase option. It involved a landlord who filed two lawsuits against its tenant-the first to recover unpaid rent under the lease agreement and a second to recover "holdover" rent for a period after the expiration of the lease. The Supreme Court simply held that the judgment in favor of the landlord in the first suit did not bar a second judgment in favor of the landlord in the second suit-i.e., res judicata did not apply.
 
 See
 

 id.
 

 at 1302-04
 
 .
 
 Murphree
 
 did not hold that a landlord is entitled to collect "holdover" rent following the landlord's own wrongful refusal to convey title pursuant to a valid purchase option.
 

 We note that it would be especially inequitable to award Adams "holdover rent" on the facts of this case. We would be rewarding Adams's wrongful refusal to convey the property with an additional $100,000 in rent that she would not have been entitled to had she honored the parties' agreement. In addition, Adams has been able to operate her liquor store rent-free during the three-plus years since she refused to convey the property. If Adams had honored the parties' agreement, she presumably would have had to pay rent to Ing for that space. Finally, Adams has continued to collect rent on the upstairs apartment for three years. If Adams had fulfilled her obligation to convey the property, Ing presumably would have collected that rent as well.
 

 In the event that Ing fails to meet his obligations to tender the purchase price and close on the contract, the issue of holdover rent would have to be revisited.