# United States Court of Appeals
## for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

November 20, 2024

No. 24-60017

Lyle W. Cayce
Clerk

Brookwood Development, L.L.C.,

*Plaintiff—Appellant*,

*versus*

City of Ridgeland, Mississippi; Gene F. McGee, *in his individual capacity*; D. I. Smith, *in his individual capacity*; Ken Heard, *in his individual capacity*; Chuck Guatier, *in his individual capacity*; Kevin Holder, *in his individual capacity*; Brian Ramsey, *in his individual capacity*; William Lee, *in his individual capacity*; Wesley Hamlin, *in his individual capacity*,

*Defendants—Appellees*.

_____

Appeal from the United States District Court
for the Southern District of Mississippi
USDC No. 3:21-CV-219

_____

Before Higginbotham, Stewart, and Haynes, *Circuit Judges*.

Per Curiam:[*]

The dispute in this case involves the intersection of municipal authority and constitutional rights and liberties. Brookwood Development,

_____

[*] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

No. 24-60017

L.L.C. ("Brookwood") sought to revitalize a vacant lot, securing an option contract and applying for a conditional use permit from the City of Ridgeland ("Ridgeland").[1] Ridgeland denied the application, and Brookwood contends that this denial did more than stifle a project—it violated its substantive due process and equal protection rights. Ridgeland, in turn, asserts that its decision was a proper exercise of its authority, not a constitutional overreach. The district court sided with Ridgeland, granting summary judgment in its favor. Brookwood now appeals, challenging whether Ridgeland's actions remain within the constitutional boundaries that constrain municipal power. Upon considering Brookwood's appeal, we AFFIRM the district court's judgment in full.

## I. Factual and Procedural History

In 2018, Ridgeland city officials grew concerned that Ridgeland was becoming a hub for storage facilities. The city's leadership believed these storage facilities were not aligned with their vision for the city's development. For this reason, Ridgeland amended its zoning ordinance to prohibit climate-controlled storage units in certain districts while also imposing spacing restrictions to prevent oversaturation. Nevertheless, StorageMax, a large climate-controlled storage facility headquartered in Jackson, Mississippi, successfully applied for a conditional use permit to construct a climate-controlled storage facility in another area of the city. Ridgeland approved StorageMax's application without objection or a moratorium.

_____

[1] Brookwood sued several city officials. They include Gene F. McGee, in his individual capacity; D. I. Smith, in his individual capacity; Ken Heard, in his individual capacity; Chuck Guatier, in his individual capacity; Kevin Holder, in his individual capacity; Brian Ramsey, in his individual capacity; William Lee, in his individual capacity; Wesley Hamlin, in his individual capacity.

No. 24-60017

Brookwood submitted an application for a conditional use permit in October 2020, seeking approval to develop a 130,000-square-foot, four-story climate-controlled storage facility in the C-4 Highway Commercial District of Ridgeland. The site, located between Interstate 55 and Highway 51, was designated for developments requiring direct highway access and visibility. Brookwood's application included its purchase contract with Drury Development Corporation ("Drury") for the property, but it lacked the required written authorization from Drury to act on its behalf in seeking the permit. The application also fell short of the required number of parking spaces under Ridgeland's zoning regulations.

Ridgeland's zoning ordinance stipulates that a "conditional use" is a land use generally deemed inappropriate for a particular zoning district but that may be allowed if it promotes public health, safety, and general welfare, and does not negatively impact surrounding properties. The approval of conditional use permits rests with the Mayor and Board of Aldermen ("Board") after they receive recommendations from the zoning board. The zoning ordinance requires specific findings that the proposed use will not harm public interests, depreciate property values, or be detrimental to public health, safety, or economic welfare. The zoning ordinance includes mandatory terms, providing that the conditional use permit "must be issued" if the standards are met.

Brookwood's application was scheduled for four public hearings before the zoning board, with each hearing continued either at Brookwood's request or due to deficiencies in the application. Eventually, in February 2021, the zoning board narrowly voted 3-2 to recommend that the Mayor and Board approve Brookwood's application.

Before the Mayor and Board could act on the application, however, Ridgeland imposed a temporary moratorium on the issuance of conditional

use permits for climate-controlled storage facilities. The purpose of the moratorium was to allow Ridgeland time to study the potential effects of such facilities on its primary retail zones and transportation corridors. In May 2021, Alan Hart, Ridgeland's Community Development Director, presented the results of the study to the Mayor and Board. He recommended an amendment to the zoning ordinance to address the oversaturation of storage facilities, which the study indicated could hinder future commercial development. Upon reviewing the study's determinations, the Mayor and Board unanimously passed a resolution that denied Brookwood's conditional use permit.

Brookwood responded by filing a lawsuit under 42 U. S. C. § 1983, arguing that Ridgeland's denial of its permit application violated its substantive due process and equal protection rights. Ridgeland moved to dismiss the individual Defendants, arguing that they were entitled to qualified immunity. The district court allowed the case to proceed, denying Ridgeland's motion. Following extensive discovery, which included depositions and expert reports, the district court granted summary judgment in favor of Ridgeland. The district court explained that Brookwood had failed to establish a protected property interest and that Ridgeland's denial of the conditional use permit was rationally related to a legitimate governmental interest. It also explained that StorageMax was not a similarly situated comparator to Brookwood. Displeased with the judgment, Brookwood appealed.

No. 24-60017

## II. Standard of Review

We review grants of summary judgment de novo. *See Wheeler v. BL Dev. Corp.*, 415 F.3d 399, 401 (5th Cir. 2005). Summary judgment is proper when no genuine issue of material fact exists, and the moving party is entitled to judgment as a matter of law. *See* Fed. R. Civ. P. 56(c); *Piazza's Seafood World, LLC v. Odom*, 448 F.3d 744, 752 (5th Cir. 2006). This court must examine the evidence in the light most favorable to the nonmovant. *Wheeler*, 415 F.3d at 401–02. To avoid summary judgment, the nonmovant must offer specific facts that demonstrate a genuine issue for trial. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). A genuine issue arises when the evidence is such that a reasonable jury could return a verdict for the nonmovant. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Summary judgment is appropriate when the nonmovant "fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Odom*, 448 F.3d at 752 (quoting *Celotex*, 477 U.S. at 322–23).

## III. Discussion

On appeal, we decide whether Ridgeland's denial of Brookwood's conditional use permit application violated Brookwood's substantive due process and equal protection rights under the Fourteenth Amendment. We address each issue in turn, starting with substantive due process.

### A. Substantive Due Process

We first address whether the district court erred in granting Ridgeland's motion for summary judgment on Brookwood's substantive due process claim. Brookwood contends that it holds a constitutionally protected property interest, either under Mississippi law or Ridgeland's zoning ordinance, and that Ridgeland wrongfully deprived it of that interest. We disagree.

No. 24-60017

The Fourteenth Amendment guarantees that "No State shall . . . deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. The process owed depends on the significance of the interests at stake, but only actions that threaten life, liberty, or property trigger due process protections. *See Tex. Fac. Ass'n v. Univ. of Tex. at Dallas*, 946 F.2d 379, 383–84 (5th Cir. 1991).

To assert a substantive due process claim, a party must allege a constitutional deprivation and demonstrate that the state action lacks a "rational relationship to a legitimate governmental interest." *Cripps v. La. Dep't of Agric. & Forestry*, 819 F.3d 221, 232 (5th Cir. 2016). Government action typically meets this standard when it protects public health, safety, or welfare. *See, e.g.*, *FM Props. Operating Co. v. City of Austin*, 93 F.3d 167, 172–73 (5th Cir. 1996). If the state's action is debatable, there is no substantive due process violation. *See Simi Inv. Co. v. Harris Cnty.*, 236 F.3d 240, 251 (5th Cir. 2000).

Property interests "are not created by the Constitution" but "are created and their dimensions are defined" by independent sources, like state law. *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 538 (1985); *see also Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982) (defining a property right as "an individual entitlement grounded in state law"). A party has a protected property interest when it shows a "legitimate claim of entitlement," not merely a "unilateral expectation." *Bd. of Regents v. Roth*, 408 U.S. 564, 577 (1972). A benefit does not achieve entitlement status if officials retain the discretion to grant or deny it. *See Town of Castle Rock v. Gonzales*, 545 U.S. 748, 756 (2005); *see also Hampton Co. Nat'l Sur., LLC v. Tunica Cnty.*, 543 F.3d 221, 226 (5th Cir. 2008) ("No discretion in the official and a reasonable expectation in the citizen are central elements.").

Federal courts look to state law to determine whether a property interest exists and "usually treat, as dispositive, the existence—or absence—of a property interest under state law." *Hignell-Stark v. City of New Orleans*, 46 F.4th 317, 322 (5th Cir. 2022). If the law, however, sets "substantive limits on official discretion," a benefit may qualify as a protected property right. *See Ridgely v. FEMA*, 512 F.3d 727, 735 (5th Cir. 2008) (citing *Ky. Dep't of Corr. v. Thompson*, 490 U.S. 454, 463 (1989)). Courts assess whether "substantive limits on official discretion" exist by looking for "explicitly mandatory language," indicating that if the regulation's criteria are met, a specific result must follow. *Id.* at 735–36. In *Ridgely*, this court found "such mandatory language . . . wholly absent" because the regulation in that case stated only that it "may" assist those who qualify, leaving room for discretion. *Id.* at 736. Therefore, whether Brookwood has a substantive due process right turns on whether it had a protected property interest in the conditional use permit.

### 1. Protected Property Interest

Brookwood maintains that its traditional ownership interest in the property, stemming from equitable title, is an "old" property interest protected by the Due Process Clause, independent of *Roth*'s "legitimate claim of entitlement" test. 408 U.S. at 577; *see* Charles A. Reich, *The New Property*, 73 Yale L.J. 733, 771–73 (1964) (comparing constitutionally protected traditional property rights with modern property interests created through government programs). Assuming *arguendo* that "old" property interests need not undergo *Roth*'s "legitimate claim of entitlement", we hold that Brookwood does not have a protected property interest in the conditional use permit under Mississippi law.

Under Mississippi law, a real estate option contract is "an agreement to sell land for a definite price, exercisable at the discretion of the promisee."

*McCorkle v. Loumiss Timber Co.*, 760 So. 2d 845, 850 (Miss. Ct. App. 2000) (citing *Duke v. Whatley*, 580 So. 2d 1267, 1272 (Miss. 1991)). The contract grants the promisee the power to decide whether to purchase while holding the price firm. "[W]ritten notice to the seller of intent of the option holder to exercise an option has the effect of an acceptance, converting the option into an enforceable bilateral contract. It is not necessary for an option holder to tender the purchase price in order to exercise the option." *Creely v. Hosemann*, 910 So.2d 512, 519 (Miss. 2005) (emphasis added) (citing *Busching v. Griffin*, 542 So.2d 860, 864–65 (Miss. 1989)). Certainly, "[a]bsent language in the contract to the contrary, an option holder has no obligation or duty to show an ability to pay the entire sales price before the closing." *Prestenbach v. Collins,* 159 So.3d 531, 534 (Miss. 2014). "The holder of an option is entitled to specific performance of the optioner's duty to convey, so long as the holder is willing to pay the option price." *Creely*, 910 So.2d at 519.

Regarding equitable ownership interest under Mississippi law, a longstanding common law tradition—equitable conversion—grants a party a property interest in the land for which she contracted. "When parties contract for the sale of real estate, an equitable conversion occurs; the purchaser becomes the equitable owner of the property." 27A AM. JUR. 2D EQUITABLE CONVERSION § 13. Mississippi caselaw adds to equitable conversion's longstanding common law pedigree. *See, e.g.*, *Hardee v. Cheatham*, 52 Miss. 41 (1876) (noting that the doctrine of equitable conversions "is founded on the principle that equity will regard a thing which ought to be done, or is directed to be done, to be actually done, as when, by will, marriage settlement, or otherwise, money is directed to be converted into land, or land into money"). More recently, the Mississippi Supreme Court addressed the concept of equitable title in *West v. West*, 88 So. 3d 735, 742 (Miss. 2012), with the Mississippi Court of

Appeals later examining the issue in *Ing v. Adam*, 248 So. 3d 881 (Miss. Ct. App. 2018).

In *West*, an ex-wife sued her ex-husband for violating the parties' property settlement agreement, which was not an option contract. *See* 88 So. 3d at 735. There, the court held that the ex-husband transferred "equitable interest" in all of the business interests he held when the two parties signed the property settlement agreement. *Id.* at 742. In *Ing*, *supra*, a vendor of a lease-purchase agreement brought an eviction action against the option holder, and the option holder counterclaimed for breach of contract. *See* 248 So.3d at 881–82. There, the purchaser timely provided written notice to exercise his option to purchase the building. *Id.* at 886. The *Ing* court concluded that, by exercising the option through timely written notice, the option holder gained equitable title to the property. *Id.* at 887 (determining that the option holder was the "equitable owner" of the property).

Here, Brookwood's contract is an option contract. It was "an agreement to sell land for a definite price." *See McCorkle* 760 So.2d at 850. The purchase price of the property, under the contract, was "[f]ifteen dollars per square foot in the area of the [p]roperty as determined by the Survey and Subdivision Plat (defined below), subject to the credits, adjustments and prorations provided for herein." The parties here clearly defined the price term for this land via this provision. As a result, Brookwood's contract had a definitive price term.

Brookwood's contract was also "exercisable at the discretion of the promisee." *Id.* Brookwood is a promisee under these circumstances, promising Drury that it would purchase Drury's lot. "Exercisable discretion" exists here as well considering the terms of the contract. Those terms allowed Brookwood, per its "reasonable discretion," to terminate the contract if it determined that the property did not suit its purpose:

Termination. If Purchaser determines, in Purchaser's reasonable discretion, that the Property is not suitable for Purchaser's purposes, Purchaser shall have the right, by delivery to Seller of written notice of termination on or before the last day of the Inspection Period, to terminate this Contract and Purchaser's obligation to purchase the Property ("Purchaser's Termination Notice"). If Purchaser's Termination Notice is timely given, the Deposit shall be returned to Purchaser and neither party shall have any further liability to the other hereunder. If Purchaser fails to deliver Purchaser's Termination Notice on or prior to the last day of the Inspection Period, Purchaser shall be deemed to have waived such termination right and the Deposit shall be non-refundable to Purchaser except in the event Seller fails or refuses to close.

Given that contractual language, Brookwood's contract bestowed it with "exercisable discretion." The contract between Brookwood and Drury therefore is an option contract.

Because Brookwood's contract is an option contract, Brookwood has no equitable title to the property at issue here. Unlike the option holder in *Ing*, Brookwood never exercised its option. *See, e.g.*, 48 So.3d at 881–82; Instead, Brookwood repeatedly sought extensions on its option from Drury. And, crucially, the contract between Brookwood and Drury contained a provision stating that "[t]he property is and will from the date hereof to the Closing Date be owned, legally and of record by Seller." It is evident then that Brookwood never exercised its option, lacking equitable title to the property. For these reasons, Mississippi law does not grant Brookwood a property interest in the conditional use permit. *See id*. Nonetheless, Brookwood urges that Ridgeland's zoning ordinance grants it a protected property interest under *Roth*, 408 U.S. at 577. We are unpersuaded.

Ridgeland's zoning ordinance has mandatory terms, providing that the conditional use permit "must be issued" if the standards are met:

> Conditional Use approval must be issued upon certain conditions, such that if the Mayor and Board of Aldermen find that an applicant meets the requisite standards specified in the Ordinance, the Conditional Use permit must be allowed. Conditions other than those delineated in the Ordinance must not be arbitrarily imposed but must be related to the purposes of zoning. Applications may be denied only on proof that the use is detrimental to the public health, safety, and welfare. Reasons for denial must be specific.

The phrases "must be issued" and "must be allowed" constitute unmistakably mandatory language. *See, e.g.*, *Ridgely*, 512 F.3d at 735 (holding that "may" lacks the force of mandatory language). The "requisite standards specified in the [o]rdinance" serve as substantive predicates, and if those standards are met, "a particular outcome must follow," compelling Ridgeland to grant the conditional use permit. *See, e.g.*, *id.* Consequently, under the zoning ordinance, Ridgeland has no discretion to deny a conditional use permit when an application satisfies the "requisite standards." Facially, the ordinance therefore confers a protected property interest to applicants that the Mayor and Board determine to have met those standards. When we apply this ordinance in the instant case, however, it becomes clear that Brookwood does not have a protected property interest in the conditional use permit.

Here, Brookwood's application was deficient. It required a document showing the owner's representative's authority to act, which Brookwood failed to provide. Rather, Brookwood submitted a "Sale Contract," a document fundamentally inconsistent with the ordinance's requirements. Additionally, the application failed to meet the parking space requirements under Ridgeland's zoning regulations. These fundamental shortcomings

preserved Ridgeland's discretion to deny the application. The ordinance, read in full, applies only to properly submitted applications. Because Brookwood's submission fell short, the ordinance is irrelevant to its claim. Without a proper application, Brookwood cannot claim a protected property interest in the conditional use permit under Ridgeland's zoning ordinance. Accordingly, we hold that the zoning ordinance does not convey any protected property interest in a conditional use permit to Brookwood.

For these reasons, we conclude that Brookwood does not have a protected property interest in the conditional use permit under Mississippi law or the zoning ordinance. Because Brookwood has no protected property interest in the conditional use permit, we need not decide whether Ridgeland's denial of Brookwood's conditional use permit application survives rational basis review.

### B. Equal Protection

Brookwood contends that Ridgeland infringed upon its equal protection rights by treating it differently from StorageMax, which Brookwood identifies as a similarly situated comparator. It claims that Ridgeland intentionally singled it out as a "class-of-one" without any rational basis for the disparate treatment. We disagree.

The pressing issue here is whether StorageMax is a similarly situated comparator to Brookwood. The Fifth Circuit has determined that when it assesses whether a similarly situated comparator exists, the parties it compares must be identical in all relevant components. This is not a mechanical test as this court has explained:

> The legal requirement that a class-of-one plaintiff's comparators be similarly situated is not a requirement susceptible to rigid, mechanical application— there is no precise formula to determine whether an individual is similarly

situated to comparators. What is relevant in one case might not be relevant in another, for example, and "the degree to which others are viewed as similarly situated necessarily will depend substantially on the facts and context of the case."[18] In short, the inquiry is case-specific and requires us to consider the full variety of factors that an objectively reasonable decisionmaker would have found relevant in making the challenged decision.

*Lindquist v. City of Pasadena Tex.*, 669 F.3d 225, 233–34 (5th Cir. 2012) (cleaned up); *see, e.g.*, *Beeler v. Rounsavall*, 328 F.3d 813, 817 (5th Cir. 2003) (holding that parties were not similarly situated comparators because the zoning ordinance distinguished two applications based on the circumstances). The plaintiff and comparator also must be "in all relevant respects alike." *Tex. Ent. Ass'n v. Hegar*, 10 F.4th 495, 513 (5th Cir. 2021) (quotation omitted). This court uses a case-specific and nonmechanical assessment to determine whether a similarly situated comparator exists.

In this case, Brookwood is not similarly situated to StorageMax for two reasons. First, the zoning districts differ between StorageMax and Brookwood. In the district court, Brookwood acknowledged this distinction, conceding that it and StorageMax were located in "different zoning districts." Ridgeland approved StorageMax's conditional use permit for a district designated for "light industrial uses." Conversely, Brookwood's permit application was for a district intended for "highly planned developments that typically require direct highway access and visibility." This zoning district distinction aligns with the ordinance's purpose: StorageMax's facility fit within its district's purpose, while Brookwood's did not. An "objectively reasonable decisionmaker would have found relevant" this distinction, as the zoning districts necessitate a distinct application of the ordinance. *See Lindquist*, 669 F.3d at 234 (holding that parties are not

similarly situated when the zoning ordinance applies differently to each project).

Second, Brookwood failed to meet a fundamental requirement: it did not provide the ownership authorization needed for the conditional use permit application. StorageMax, by contrast, included this authorization when applying. An "objectively reasonable decisionmaker would have found relevant" this failure, as Brookwood's noncompliance with Ridgeland's application requirements directly impacted the decisionmaking process. *See id.* (parties were not similarly situated where one party provided letters from affected residents expressing no objections, while the other did not).

Thus, we conclude that StorageMax and Brookwood are not similarly situated comparators. Given this conclusion, we need not determine whether Ridgeland's differentiation between the applications would withstand rational basis review.

## IV. Conclusion

For the foregoing reasons, we AFFIRM the district court's judgment.