ROBERTS, J.,
for the Court:
¶ 1. This appeal centers on a property transaction that mistakenly transferred title to two houses rather than one. Shelly Kelly bought a house from Harrison Barry for $5,000. More than two years later, Barry realized that the description of the property in Kelly’s warranty deed included the house that Kelly bought as well as the house next door. Kelly would not sign a quitclaim deed to correct the mistake, so Barry sued Kelly to reform Kelly’s deed. The Washington County Chancery Court found that there had been a mutual mistake in Kelly’s deed. Consequently, the chancellor reformed the deed to reflect the fact that Kelly had only purchased one house from Barry, rather than two houses. Kelly appeals. Kelly claims the chancellor erred when she found there was a mutual mistake in the deed. Kelly also claims the chancellor erred when she prohibited Kelly from presenting evidence to support a counterclaim that Kelly did not raise in her pleadings. Finding no error, we affirm.
FACTS AND PROCEDURAL HISTORY
¶ 2. Barry owned two lots in the Shelton Subdivision in Greenville, Mississippi. The two lots have street addresses listed as 330 Lake Street and 332 Lake Street. Kelly approached Barry in November 2006 for the purpose of renting a house. However, Kelly and Barry agreed that Kelly would buy a house that Barry owned at 330 Lake Street for $5,000. Barry approached his attorney, Edward A. Lueck-enbach, and asked him to prepare a deed. By the terms of their agreement, Kelly paid Barry $1,000 down, and Barry financed the remaining $4,000 per the terms of a promissory note and a deed of trust.
¶ 3. While preparing the necessary documents, Lueckenbach went to the Washington County courthouse to obtain a legal description of the property at 330 Lake Street. Lueckenbach was not asked to conduct a title search. Lueckenbach pulled the tax statement for the property, which referred him to a book and page of the deed by which Barry had obtained the property. That deed contained descriptive language for “Lots 51 & 52.” Luecken-bach did not realize that Lots 51 and 52 included both 330 Lake Street and 332 Lake Street, since the deed did not reference actual street addresses.
¶ 4. After their transaction, Barry converted 332 Lake Street from a single-family dwelling to a boarding house. He paid for air conditioning and plumbing repairs. He also paid Samuel Goods to install a new water heater, furnace, closet, door locks, and doors. Barry also paid for all of the necessary materials. Additionally, Barry paid Goods to paint and repair the bathroom. Barry paid all of the utilities, taxes, and insurance premiums for 332 Lake *133 Street. When Kelly complained that the tenants at 382 Lake Street were too loud, Barry allowed her to screen the tenants. Kelly collected the rent from the tenants at 382 Lake Street, and she turned it over to Barry.
¶ 5. In early 2009, Kelly contacted Barry and asked him why the tax statement for 332 Lake Street was mailed to her house. Barry then contacted Lueckenbach, who then discovered that Kelly’s deed mistakenly transferred title to 330 Lake Street and 332 Lake Street. Lueckenbach’s office contacted Kelly and asked her to sign a quitclaim deed to correct the error. Kelly read the quitclaim deed that Luecken-bach had prepared, but she refused to sign it. Kelly then began paying the taxes and utilities for 332 Lake Street. Barry asked Kelly why she would not sign the deed correcting the mistake in the original deed. Kelly responded that it was not her mistake.
¶ 6. In August 2009, Barry filed a complaint against Kelly. Barry claimed that Kelly had obtained the property at 332 Lake Street due to a scrivener’s error. According to Barry, he had not intended to convey title to 332 Lake Street, and Kelly had not intended to acquire title to 332 Lake Street. In other words, Barry claimed that Kelly had obtained title to 332 Lake Street as a result of their mutual mistake. Barry requested that the chancery court reform the deed to 332 Lake Street so that he was listed as the owner of that property.
¶ 7. Kelly responded and denied that there had been a mutual mistake. Kelly also filed a counterclaim against Barry and argued that she was entitled to the rent that Barry had collected from 332 Lake Street since their transaction. Specifically, Kelly claimed that Barry owed her more than $7,000 in rent.
¶ 8. The parties went to trial. Additional events that occurred prior to the commencement of Barry’s case-in-chief will be discussed in the analysis portion of this opinion. Barry testified that he believed that he had only sold the house at 330 Lake Street. He did not intend to sell the house at 332 Lake Street. He further testified regarding the expenses that he paid to repair the property at 332 Lake Street and convert it into a boarding house. Goods corroborated Barry’s testimony. Additionally, Lueckenbach testified regarding his involvement in the initial transaction, and his subsequent attempt to have Kelly sign a quitclaim deed to correct the mistake in her warranty deed.
¶ 9. However, Kelly testified that she intended to buy both 330 Lake Street and 332 Lake Street for $5,000. Notwithstanding Kelly’s testimony, the chancellor found that Kelly’s warranty deed contained a scrivener’s error “based upon mutual mistake of the parties.” The chancellor also found that Kelly and Barry “had a meeting of the minds that the only property to be conveyed was 330 Lake Street.” According to the chancellor, “an error in the description was made when the deed and [the] deed of trust were drafted.” The chancellor found that “Kelly sought to take advantage of that error to the detriment of Barry.” Consequently, the chancellor reformed Kelly’s warranty deed so that it only conveyed the property at 330 Lake Street. The chancellor found no merit to Kelly’s counterclaim. Kelly appeals.
STANDARD OF REVIEW
¶ 10. “We will not disturb the chancellor’s opinion when it is supported by substantial evidence unless the chancellor abused [her] discretion, [or] was manifestly wrong [or] clearly erroneous[.]” Olive v. McNeal, 47 So.3d 735, 739 (¶ 10) (Miss.Ct.App.2010) (citation omitted). Ad *134 ditionally, we will reverse the chancellor’s decision if she applied an erroneous legal standard. Id. We review questions of law de novo. Id.
ANALYSIS
I. SUFFICIENT EVIDENCE OF MUTUAL MISTAKE
¶ 11. Kelly argues that the chancellor erred when she held that Barry proved that it was a mutual mistake to include 332 Lake Street in their transaction involving 330 Lake Street. According to Kelly, the chancellor should not have believed Barry’s testimony that he did not know the warranty deed included 332 Lake Street. Kelly notes that the warranty deed stated that it included two lots. Kelly also argues that Barry was “well aware that the property description included two separate residential structures, i.e., 330 Lake Street and 332 Lake Street.” Kelly further notes that Barry testified that he was a college graduate. Additionally, Kelly argues that Barry was experienced in property transactions in that he had been in the real-estate business for fifteen years and owned approximately thirty properties.
¶ 12. “A deed may be reformed where it is shown to [have] resulted] from the mutual mistake of the parties in contracting for it.” Olive, 47 So.3d at 739 (¶ 12) (citing Brown v. Chapman, 809 So.2d 772, 774 (¶ 9) (Miss.Ct.App.2002)). As stated in Brown:
The law permits reformation of instruments to reflect the true intention of the parties when ... the erroneous part of the contract is shown to have occurred by a mutual mistake, i.e., the party seeking relief is able to establish to the court’s satisfaction that both parties intended something other than what is reflected in the instrument in question[.]
Brown, 809 So.2d at 774 (¶ 9). “The party seeking reformation of a deed on a mistake theory bears the burden of proof beyond a reasonable doubt.” Olive, 47 So.3d at 739-40 (¶ 13) (citing McCoy v. McCoy, 611 So.2d 957, 961 (Miss.1992)).
¶ 13. Kelly notes that in Olive, this Court affirmed a chancellor’s decision that a litigant had failed to demonstrate mutual mistake because: (1) the document at issue in Olive was titled as a warranty deed; (2) the grantor was literate; (3) the grant- or had several opportunities to review the warranty deed; (4) the grantor had some experience in real-estate transactions; and (5) the grantor had an opportunity to discuss the warranty deed with his attorney. Olive, 47 So.3d at 740 (¶ 17). Kelly argues that the circumstances in this case are similar to the circumstances in Olive. We disagree.
¶ 14. Without question, the document at issue in this case was styled as a warranty deed. However, the property description merely indicated that Kelly was acquiring “Lots 51 & 52.” The property description does not indicate that Barry was selling Kelly 330 Lake Street and 332 Lake Street. In preparing the warranty deed, Lueckenbach could have mistakenly believed that “Lots 51 & 52” both applied to a single street address. Barry testified that he did not read the property description. Even if he had, no portion of the property description would have placed him on notice that he was mistakenly transferring title of two separate street addresses.
¶ 15. Furthermore, Barry’s behavior after the transaction indicated that he believed he never transferred title to 332 Lake Street. He paid for substantial repairs to 332 Lake Street and converted it to a boarding house. And he continued to pay the utility bills, taxes, and insurance premiums that related to the property.
*135 ¶ 16. According to Barry’s testimony, Kelly’s behavior also indicated that she did not own 332 Lake Street after she bought 330 Lake Street. Kelly complained to Barry that the tenants at 332 Lake Street were too loud. If Kelly actually believed that she had bought 332 Lake Street along with 330 Lake Street, there would have been no reason for Kelly to complain to Barry. Kelly did not pay for any expenses related to 332 Lake Street until after she discovered that the deed fortuitously included language that applied to 332 Lake Street as well as 330 Lake Street. Although Barry allowed Kelly to collect rent from the tenants and screen the tenants at 332 Lake Street after Kelly’s noise complaint, Kelly turned over the rent to Barry. Barry did not pay Kelly anything in exchange. If Kelly believed that she had bought 332 Lake Street, it defied logic for her to give Barry the rent that property generated. It was within the chancellor’s discretion to weigh the credibility of the witnesses. Suffice it to say, it was reasonable for the chancellor to believe Barry, Goods, and Lueckenbach over Kelly’s self-serving testimony. There is no merit to this issue.
II. COUNTERCLAIM
¶ 17. As previously mentioned, Kelly filed a counterclaim and argued that she was entitled to the rent that 332 Lake Street generated after her transaction with Barry. Specifically, Kelly’s counterclaim indicated that Barry had “received rents from ... 332 Lake Street ... in excess of $7,000.00.” Kelly’s counterclaim stated that “[a]s record owner of the ... real property, [Kelly] is entitled to proceeds for the rental of [the] property.”
¶ 18. The trial had initially been scheduled for March 24, 2011. However, the record indicates that the trial was actually on May 19, 2011. The record does not contain a continuance reflecting a rescheduled trial date. In any event, when the trial began, a portion of Kelly’s opening statement indicated that Kelly “agreed to purchase [332 Lake Street] for $7,000.” Kelly also argued:
[U]pon [Barry] making necessary repairs to the 332 Lake Street property, ... [Kelly] would pay all monies to Mr. Barry up to $7,000, the purchase price of the property. In effect, this was a lease[-]purchase agreement for that 332 Lake [Street] property in which Ms. Kelly would take all responsibility for all of the rental of the property and pay all funds over to Mr. Barry[,] which she did.
In other words, Kelly attempted to argue that rather than collecting rent that belonged to Barry and tendering it to him, she was actually collecting her own rent and paying Barry for her purchase of 332 Lake Street. Barry’s attorney noted that Kelly’s counterclaim contained no mention of a “side deal” for 332 Lake Street. Consequently, Barry’s attorney objected “to any testimony about some side deal to purchase [332 Lake Street] for $7,000.”
¶ 19. The chancellor then stated that she “thought that is precisely the reason this case was continued until today is that that was addressed in my chambers the last time this was on the docket and it was continued to give [Kelly an] opportunity to correct the pleadings.” Kelly’s attorney did not address the fact that Kelly had not amended her counterclaim. Instead, Kelly’s attorney responded that Kelly’s “counterclaim specifically states that Ms. Kelly allege[d] that she is the owner of the real property and that as owner of the real property, she is entitled to all proceeds that have been paid to Mr. Barry for the rental of that property.” Again, the chancellor stated that on the initial trial date, Barry’s attorney said he was not prepared *136 to defend against Kelly’s “side-deal” claim “because [Kelly] hadn’t pled it.” The chancellor again noted that she gave Kelly a continuance so she could amend her counterclaim to include her “side-deal” claim. After more similar back-and-forth, the chancellor held that “the case was continued in order to give you [(Kelly)] time to amend your pleadings, so along those lines[,] the [c]ourt agrees with [Barry’s attorney] and if it’s not in the pleadings, it is not going to be addressed today.” Stated differently, the chancellor prohibited Kelly from raising her counterclaim that she gave Barry the rent from 832 Lake Street as the purchase price for that property.
¶ 20. Kelly claims the chancellor erred by excluding “evidence relating to [her][c]ounterclaim.” Kelly argues that her counterclaim “specifically allege[d] that she is the owner of ... 382 Lake Street[,] and she is entitled to the rental proceeds collected by Barry over and above the $7,000.00 purchase price for the property.” According to Kelly, because Barry filed an answer to her counterclaim, the chancellor should have allowed her to introduce evidence to support her counterclaim. Kelly cites Rule 12 of the Mississippi Rules of Civil Procedure as the sole authority in support of her argument.
¶ 21. First and foremost, Kelly’s argument is based on a misrepresentation of the record. Kelly’s counterclaim never included a claim that she was entitled to rent “over and above the $7,000.00 purchase price for [332 Lake Street.]” Instead, her counterclaim alleged that she was “entitled to proceeds for the rental of [the] property.” Her counterclaim further alleged that Barry had “received rents from ... 332 Lake Street ... in excess of $7,000.00.” Kelly’s counterclaim included no reference to the concept that she had agreed to purchase 332 Lake Street for $7,000. Likewise, her counterclaim included no reference that she was entitled to rent “over and above” $7,000. Succinctly put, Kelly’s sole counterclaim was that she had purchased 330 Lake Street and 332 Lake Street at the same time, and she was therefore entitled to the $7,000 that Barry had collected in rent. There is a clear and distinct difference between Kelly’s counterclaim and her subsequent attempt to argue that the $7,000 Barry collected was the purchase price for 332 Lake Street, and she was entitled to rent that Barry collected in excess of $7,000. The chancellor rescheduled the trial to give Kelly an opportunity to amend her counterclaim. Nevertheless, Kelly failed to do so. It is procedurally improper to assert a counterclaim without actually filing it. Keyes v. Berry, 995 So.2d 861, 864 (¶ 18) (Miss.Ct.App.2008). The chancellor did not err when she prohibited Kelly from asserting a counterclaim that Kelly had not raised. There is no merit to this issue.
¶ 22. THE JUDGMENT OF THE WASHINGTON COUNTY CHANCERY COURT IS AFFIRMED. ALL COSTS OF THIS APPEAL ARE ASSESSED TO THE APPELLANT.
LEE, C.J., GRIFFIS, P.J., BARNES, ISHEE, CARLTON, MAXWELL, FAIR AND JAMES, JJ., CONCUR. IRVING, P.J., CONCURS IN PART AND IN THE RESULT.