# IN THE COURT OF APPEALS OF THE STATE OF MISSISSIPPI

## NO. 2016-CA-01439-COA

**ODIS EMERY**                                                           **APPELLANT**

**v.**

**GREATER GREENVILLE HOUSING AND**                          **APPELLEE**
**REVITALIZATION ASSOCIATION**

DATE OF JUDGMENT:              09/02/2016
TRIAL JUDGE:                  HON. MARIE WILSON
COURT FROM WHICH APPEALED:    WASHINGTON COUNTY CHANCERY
                              COURT
ATTORNEYS FOR APPELLANT:      DEREK D. HOPSON
                              DEREK DEWAYNE HOPSON JR.
ATTORNEYS FOR APPELLEE:       ROBERT N. WARRINGTON
                              ALEXANDRA HUTTON OGLESBY
NATURE OF THE CASE:           CIVIL - REAL PROPERTY
DISPOSITION:                  REVERSED AND REMANDED - 06/12/2018
MOTION FOR REHEARING FILED:
MANDATE ISSUED:

**BEFORE LEE, C.J., CARLTON AND WESTBROOKS, JJ.**

**CARLTON, J., FOR THE COURT:**

¶1.     This case concerns a default judgment entered in a lawsuit in which Greater

Greenville Housing & Revitalization Association ("Greater Greenville") sought to reform

a warranty deed conveying certain property to Odis Emery in 2011.  Over four years after

executing and delivering the warranty deed to Emery, Greater Greenville discovered that the

legal descriptions in the warranty deed contained four additional properties that Greater

Greenville claims it did not intend to convey.

¶2.     After it was unable to resolve the matter with Emery, Greater Greenville filed suit,

seeking a decree reforming the warranty deed to exclude the four additional properties based upon mutual mistake and a scrivener's error. Emery was served with the summons and the complaint but failed to timely file an answer. Greater Greenville obtained a default judgment, and just over three weeks later, Emery filed his motion to set aside the default judgment.

¶3.     The chancery court denied Emery's motion, applying the three-prong balancing test used in assessing whether a default judgment should be set aside under Rule 55(c) and Rule 60(b) of the Mississippi Rules of Civil Procedure.[1] The chancery court found that although Greater Greenville did not show it would be prejudiced if the default judgment were set aside, Emery had failed to show good cause for his default, and he failed to show he had a colorable defense to Greater Greenville's deed-reformation lawsuit.

¶4.     Emery appeals, arguing that the chancery court's refusal to set aside the default judgment was an abuse of discretion because he had shown both good cause for his default, and that he had a colorable defense to Greater Greenville's lawsuit.

¶5.     We find that the chancery court did not abuse its discretion in finding against Emery on the good cause prong of the Rule 60(b) three-prong balancing test; or in finding against Greater Greenville on the prejudice prong. We find, however, that the record shows that Emery demonstrated he had a colorable defense to Greater Greenville's lawsuit, and that the chancery court's determination that he did not have a colorable defense was based on an error of law. Accordingly, based on the record and the applicable law, we hold that the default

---

[1] *See BB Buggies, Inc. v. Leon*, 150 So. 3d 90, 101 (¶23) (Miss. 2014).

judgment against Emery should be set aside under the Rule 60(b) three-prong balancing test. Therefore, we reverse the chancery court and remand this case for further proceedings.

**FACTS**

¶6.     Greater Greenville is a Mississippi non-profit corporation located in Greenville, Mississippi.  Odis Emery lives in Hollandale, Mississippi.  On March 2, 2011, Emery and Greater Greenville executed an option to purchase certain properties.  Fredrick Spencer was the Executive Director of Greater Greenville at that time and executed the option to purchase on Greater Greenville's behalf.  The option provided as follows:

OPTION TO PURCHASE

Greater Greenville Housing & Revitalization Association Inc. has agreed to s[ell] the following properties to Odis Emery of 609 Taft Street, Hollandale, MS 38748 for $75,000.00:

• 510 Wright Street          Greenville, MS
• 544 S. Hinds Street        Greenville, MS
• 405 A & B North Street    Greenville, MS
• 464 Hughes Street          Greenville, MS
• 415 Slaughter Street       Greenville, MS
• 417 Slaughter Street       Greenville, MS

This offer is contingent upon the buyer approval for financing.

¶7.     The option contains no recital that Emery paid any consideration for it, and there is no evidence in the record that Emery did so.  The option also does not contain a time frame within which Emery must exercise the option upon meeting the financing contingency.

¶8.     According to Emery, and as supported by Spencer's affidavit, Emery and Spencer, as the agent for Greater Greenville, viewed the original six properties and then agreed to include four additional properties in the sale.  As set forth in the Spencer affidavit, the reason for

3

including the four additional properties was to assist Emery with the loan he had taken out to purchase the property[2]—and to address the pressure that the City of Greenville was putting on Greater Greenville to revitalize the subject properties, including the four additional properties. These four additional properties included the homes and surrounding property located at the following addresses:

- 542 South Hinds Street    Greenville, MS
- 509 Roach Street          Greenville, MS
- 511 Roach Street          Greenville, MS
- 427 Wright Street         Greenville, MS

¶9.    On April 18, 2011, Emery paid Greater Greenville $75,000.00, and Greater Greenville executed and delivered a warranty deed conveying certain real property to Emery. The legal property descriptions in the warranty deed contained all ten properties, the original six properties listed in the option, and the four additional properties listed above, which were described by lot and block designations and metes and bounds descriptions. Additionally, the legal descriptions for the properties located at "464 Hughes Street" and "415-417 Slaughter Lane" are labeled in the deed; there are notations in the margin for properties on "Wright Street," "S. Hinds" and "North Street," but they contain no specific street-number references. There were no notations or labels in the warranty deed regarding the legal description encompassing the Roach Street properties.[3]

---

[2] Though the record does not contain documentary evidence that Emery obtained financing, he asserts in his Appellant's Brief that he did so, and this fact is not disputed.

[3] Greater Greenville had previously granted Planters Bank a deed of trust on certain property, including the property described in the warranty deed. In connection with the closing on the properties, Planters Bank executed and delivered five partial releases of Greater Greenville's deeds of trust on the property.

¶10.    Over four years after conveying the property to Emery, Greater Greenville discovered the discrepancy between the home addresses listed in the option to purchase and the warranty deed's legal descriptions, which included the original six properties listed in the option and the four additional properties.  By a letter dated December 23, 2015, Greater Greenville attempted to resolve what it believed to be a scrivener's error in the deed's legal descriptions by contacting Emery and the attorney who represented him at that time, Willie Bailey.  In that letter, Greater Greenville set out what it believed were the facts and issues relating to the deed's legal descriptions and detailed an offer to resolve the matter without the necessity of litigation.

¶11.    The record contains the affidavit of Willie Bailey, in which he said that he withdrew from representing Emery on or about December 23, 2015, but before that time he had conveyed to Greater Greenville's counsel that Emery disputed the matter and would defend against any future litigation regarding the matter.  Upon learning that Baily no longer represented Emery, Greater Greenville's counsel contacted Emery directly by a letter dated January 14, 2016, reiterating the facts and issues set out in the earlier letter it had sent to Bailey and proposing settlement.

¶12.    When Greater Greenville did not received a response from Emery, it filed a Complaint to Reform Deed and for Other Relief in the Chancery Court of Washington County, Mississippi, naming Odis Emery, Planters Bank & Trust Company (Planters Bank), and Emery's two apparent judgment creditors, Tower Loan and the Mississippi Department of Revenue as defendants.  Greater Greenville sought, among other things, to obtain a decree

reforming the deed due to a mutual mistake and scrivener's error and confirming title in Greater Greenville for the four additional properties, namely the homes and surrounding property located at 542 South Hinds Street, 509 Roach Street, 511 Roach Street, and 427 Wright Street, in Greenville, Mississippi.

¶13. Emery was personally served with the summons and a copy of the complaint on January 28, 2016.[4] It is undisputed that Emery did not serve any responsive pleading within 30 days of service of the summons and complaint. To avoid repetition we will address the circumstances surrounding Emery's failure to timely answer in the discussion section below.

¶14. On March 2, 2016, counsel for Greater Greenville filed a request for entry of default against Emery. On that same day the clerk entered a default against Emery for failure to appear, plead, or otherwise defend the action. The next day, Greater Greenville filed its motion for default judgment and other relief and mailed a copy of the motion to Emery. On March 7, 2016, a final judgment was entered in which, among other forms of relief, the chancery court granted a default judgment against Emery; reformed the warranty deed from Greater Greenville to Emery dated April 18, 2011, to exclude the additional four properties due to mutual mistake and a scrivener's error; and ordered that Greater Greenville was the lawful holder of title to the four additional properties, exclusive of Emery's interests. The

[4] Greater Greenville also served the other defendants. On February 19, 2016, Greater Greenville filed a notice of voluntary dismissal as to defendant Tower Loan because Tower Loan's judgment against Emery was shown to have been satisfied after the filing of the complaint. Defendant Mississippi Department of Revenue filed an entry of appearance on February 19, 2016, in which it stated that the Department had no outstanding liens against the property that is the subject of this action or against Emery. Defendant Planters Bank filed a waiver of process on March 1, 2016, waiving process and joining in the complaint filed by Greater Greenville and in the relief requested.

final judgment was amended the next day when it was discovered that part of the legal description had been omitted from the March 7 final judgment. The amended final judgment was entered on March 9, and the clerk filed this judgment in the land records of Washington County on March 15.[5]

¶15. Immediately following the entry of the default judgment, Greater Greenville had the four additional properties classified as tax exempt, paid the delinquent taxes on those properties, and had Planters Bank reinstate the deed of trust with Greater Greenville and release its deed of trust with Emery as to the four additional properties.

¶16. On April 1, 2016, just over three weeks after entry of the default judgment, Emery filed his motion to set aside the default judgment and for leave to file an answer. Counsel for Greater Greenville received a copy of this filing on April 4, after the actions it took in accordance with the default judgment had already taken place. Greater Greenville filed a response to Emery's motion on April 15, and the matter was set for an August 23 hearing. Four days before the hearing, Emery filed his rebuttal supporting his motion to set aside the default judgment.

¶17. After conducting a hearing, the chancery court entered its final order denying Emery's motion to set aside the default judgment. The chancery court first found that the default judgment was not void based upon Emery's argument that he was entitled to three-days notice prior to entry of default.[6] The chancery court then applied the three-prong balancing

---

[5] For clarity, we refer to the March 9 amended final judgment as the default judgment.

[6] Emery does not raise this three-day notice issue on appeal.

test used in assessing whether a default judgment should be set aside pursuant to Rules 55(c) and 60(b). Namely, the chancery court assessed (1) whether Emery had "good cause" for his default; (2) whether Emery had a "colorable defense" to Greater Greenville's lawsuit; and (3) the nature and extent of any prejudice to Greater Greenville if the default judgment were set aside. *BB Buggies, Inc.*, 150 So. 3d at 101 (¶23). Under this test, the chancery court held that although Greater Greenville would not suffer prejudice as that term is applied in the Rule 55(c) and Rule 60(b) context, Emery failed to show good cause for his default, and he did not show that he had a colorable defense to Greater Greenville's deed reformation lawsuit. Accordingly, the chancery court denied Emery's motion to set aside the default judgment.

¶18. On appeal, Emery asserts that (1) there was "good cause shown" for setting aside the entry of default and the chancery court abused its discretion in failing to do so; and (2) the chancery court abused its discretion in failing to set aside the default judgment because Emery showed (a) he had legitimate reasons (i.e., good cause) for default; (b) he has a colorable defense to Greater Greenville's reformation lawsuit; and (c) the delay between entry of default and the filing of his motion to set aside default judgment was not prejudicial to Greater Greenville.

**DISCUSSION**

**I.      Standard of Review**

¶19.    "An application for vacation of a default judgment is addressed to the sound discretion of the trial court." *Tucker v. Williams*, 198 So. 3d 299, 309 (¶24) (Miss. 2016) (quoting *Guar. Nat'l Ins. Co. v. Pittman*, 501 So. 2d 377, 388 (Miss. 1987)). In this regard, "[t]he trial

court should exercise its discretion within the strictures of Rules 55(c) and 60(b), along with the criteria set forth by this Court." *Id.* The grant or denial of a motion to set aside an entry of default or a default judgment is reviewed for abuse of discretion. *Id.* "But if the trial court's decision was based on an error of law, then we will reverse." *Id.* (citing *Allstate Ins. Co. v. Green*, 794 So. 2d 170, 173 (¶8) (Miss. 2001)). Further, the Mississippi Supreme Court "has been clear that default judgments are not favored." *BB Buggies, Inc*., 150 So. 3d at 101 (¶22) (internal quotation mark omitted). In particular, "trial courts should not be grudging in . . . vacating such judgment where showings within the rules have arguably been made." *Id.* (internal quotation marks omitted).

## II.     Setting Aside Entry of Default

¶20.    On appeal, Emery contends that the chancery court abused its discretion in failing to find he showed good cause to "set aside the entry of default" in this case. A review of the record reflects, however, that Emery made no "good cause" challenge to the *entry of default* before the chancery court. The chancery court specifically made this finding in its final order denying Emery's motion to set aside the default judgment, as follows:

> *Emery does not seek to set aside the clerk's entry of default, he seeks to set aside a default judgment*. Miss. R. Civ. P. Rule 55(c) provides the procedural vehicle whereby a default entered by the clerk may, "for good cause shown," be set aside by the court. In the event that a default judgment has been entered, the moving party must make a showing sufficient to vacate the judgment under Miss. R. Civ. P. Rule 60(b). *King v. Sigrest*, 641 So. 2d 1158 (Miss. 1994). Thus, Emery must proceed under Rule 60(b).

(Emphasis added).

¶21.    Emery's "good cause to set aside entry of default" issue is procedurally barred because

9

he did not raise this issue in the chancery court. *Bender v. N. Meridian Mobile Home Park*, 636 So. 2d 385, 389 (Miss. 1994) ("[A] trial judge cannot be put in error on a matter not presented to him for his decision."); *Allgood v. Allgood*, 473 So. 2d 416, 423 (Miss. 1985) ("As a prerequisite to obtaining review in this Court, it is incumbent upon a litigant that he not only plead but press his point in the trial court."); *Ammons v. Cordova Floors, Inc.*, 904 So. 2d 185, 192 (¶25) (Miss. Ct. App. 2005) (finding issue procedurally barred because it was not raised in the trial court).

¶22.    We now turn to address Emery's arguments that the default judgment should have been set aside under the three-prong balancing test developed under Rules 55(c) and 60(b) of the Mississippi Rules of Civil Procedure.

### III.    Application of the Three-Prong Test under Rule 60(b) in Determining Whether a Default Judgment Should be Set Aside

¶23.    As the Mississippi Supreme Court has explained, "[a]ccording to Rule 55(c), a default judgment may be set aside '[f]or good cause shown' and in accordance with Rule 60(b)." *BB Buggies, Inc.*, 150 So. 3d at 101 (¶23) (quoting M.R.C.P. 55(c)).    The Court has articulated a three-pronged balancing test the trial court must apply in determining whether to set aside a judgment pursuant to Rule 60(b):

> (1) the nature and legitimacy of the defendant's reasons for his default, i.e. whether the defendant has good cause for default, (2) whether the defendant in fact has a colorable defense to the merits of the claim, and (3) the nature and extent of prejudice which may be suffered by the plaintiff if the default judgment is set aside.

*Id.*    As noted above, we apply an abuse of discretion standard in reviewing the chancery court's denial of Emery's motion to set aside the default judgment.    If the chancery court's

10

decision is based upon an error of law, however, we will reverse. *Tucker*, 198 So. 3d 299, 309 (¶24).

### A. *Good Cause*

¶24. The chancery court held that Emery failed to show "good cause" for his default, and thus did not meet the first prong of Rule 60(b)'s three-part balancing test. We agree. Based on the record and the applicable law, the chancery court did not abuse its discretion in making this determination. *See Pittman*, 501 So. 2d at 386-88.

¶25. Emery contends that he presented sufficient evidence in the chancery court to support a finding in his favor on the "good cause" element. Emery submitted his own affidavit in which he states that when he was served with the complaint on January 28, 2016, he did not know how to begin addressing the legal substance or process of the case. Immediately upon being served, Emery began seeking counsel to represent him. He contacted four attorneys, but none of them were available to represent him due to scheduling conflicts or other reasons.

¶26. Though Emery's answer was due Monday, February 29, 2016, there is no evidence in the record that at any time after being served with the complaint that Emery contacted Greater Greenville or its counsel, the clerk, or the court about this matter—even though the record reflects that Emery knew the name and address of Greater Greenville's counsel, as Emery had just received a proposed settlement letter from him in January 2016.

¶27. According to the statements in Emery's affidavit, he was referred to Renetha Frieson in March. She was on leave until March 21, so on March 22 Emery retained Frieson to represent him in this matter. Her first appearance in this case was on April 1, when she filed

11

the motion to set aside the default judgment on Emery's behalf.

¶28.    Under similar facts, the Mississippi Supreme Court in *Pittman* found that the defendant truckdriver there had shown no good cause for default:

> Hardin was served with a summons which advised him in no uncertain terms that he must answer within thirty days or suffer default. . . . Assuming that Hardin could count to thirty and had some rudimentary familiarity with the Julian calendar, the summons instructed him that his answer was due on December 12, 1984. That day came and passed and, insofar as the record reflects, Hardin did nothing.

*Pittman*, 501 So. 2d at 386-87. In addition to finding that the summons plainly instructed Hardin as to what he must do, the Court also found it was relevant that Hardin knew the name and address of the plaintiff's attorney, but Hardin still did nothing about addressing the lawsuit filed against him. *Id.* at 387. The Court acknowledged that although Hardin made "repeated efforts to get his employer and its insurer to do something," *id*. at 388, no answer was timely filed. The confusion over whether Hardin had insurance coverage, the Court held, did not justify Hardin's failure to answer the complaint. *Id.*

¶29.    The summons Emery received in this case contained the same plainly worded warning that he must address the complaint within 30 days of service "or a [j]udgment by default will be entered against you." The record reflects that Emery understood the complaint needed to be handled because he immediately began to search for an attorney. Though we recognize that he attempted to obtain counsel, caselaw reflects that this does not excuse him from addressing the complaint in some way before an answer was due. *Pittman*, 501 So. 2d at 386-88. Indeed, even where a defendant obtains counsel, good cause for default is still lacking where the defendant fails to follow-through and ensure an answer is filed. *See*

12

*Woodruff v. Thames*, 143 So. 3d 546, 551, 553 (¶¶8, 15-16) (Miss. 2014) (finding no "good cause" for default where, although defendant was initially diligent in taking the complaint served upon him to an attorney before the thirty days to answer had expired, he never followed up to see that an answer was filed); *H & W Transfer & Cartage Serv., Inc. v. Griffin*, 511 So. 2d 895, 899 (Miss. 1987) (finding that although defendant's initial steps were "reasonable and prudent," it "thereafter dropped the ball" by failing to follow-up and ensure the complaint was answered); *Tippah Cty. v. Childers*, 21 So. 3d 658, 661 (¶12) (Miss. Ct. App. 2009) ("Tippah County dropped the ball after it was properly served with process and delivered a copy of the summons and complaint to its insurance agent. Tippah County was the named defendant in the complaint, and it was Tippah County's responsibility to make sure that an answer was filed.").

¶30. Based on the record and the applicable law, we find no abuse of discretion in the chancery court's conclusion that Emery failed to show sufficient circumstances that would annul his obligation to timely respond to the complaint in some form, and the record supports the chancery court's finding that Emery did not show good cause for his default.

¶31. "However, lack of good cause alone will not prevent the Court from setting aside a default judgment if the other two factors weigh in favor of setting it aside." *BB Buggies, Inc.*, 150 So. 3d at 102 (¶24) (citing *Am. Cable Corp. v. Trilogy Commc'ns, Inc.*, 754 So. 2d 545, 556 (¶44) (Miss. Ct. App. 2000)). We address the remaining two factors below.

### B. *Colorable Defense*

¶32. The Mississippi Supreme Court has "held unequivocally that the second factor [in the

Rule 60(b) balancing test], the presence of a colorable defense, outweighs the other two, and [the Supreme Court has] encouraged trial courts to vacate a default judgment where the defendant has shown that he has a meritorious defense." *BB Buggies, Inc.*, 150 So. 3d at 102 (¶25) (internal quotation marks omitted). In addressing the definition of a "colorable defense," the Court has explicitly stated that "[a] colorable defense is one that reasonably may be asserted, given the facts of the case and the current law." *Tucker*, 198 So. 3d at 312 (¶35). Further, "[a] defense need not be compelling, be proven to trial standards, or be supported by sworn evidence in order to qualify as a 'colorable defense.'. . . Rather, the defense must be a reasonable one." *Id.* (citation omitted). "Indeed, [the Mississippi Supreme] Court has held that even a defense of 'questionable' strength may be colorable." *Id.* (quoting *Woodruff*, 143 So. 3d at 553 (¶18)).

¶33.    The chancery court held that Emery did not present a "colorable defense" and thus decided the second prong of Rule 60(b)'s three-part balancing test against Emery. Upon review of the record and the applicable law, we find that the chancery court's ruling on this issue was based on an error of law, and therefore we reverse the chancery court on this issue for the reasons addressed below.

¶34.    In this case Greater Greenville seeks reformation of the warranty deed because, it contends, the inclusion of the four additional properties in the deed's legal property descriptions was a mutual mistake and the result of a scrivener's error. In support of this argument, Greater Greenville asserts that the option, which listed the six undisputed properties, was a valid contract for the sale of land. From this, Greater Greenville contends

that in order for the warranty deed to validly convey the four additional properties to Emery, there needed to be a written modification of this "contract for sale" in satisfaction of the statute of frauds. *See* Miss. Code Ann. § 15-3-1 (Rev. 2012). According to Greater Greenville, because there was no such written modification, the terms of the original option (which Greater Greenville deems is a "contract for sale") govern the transaction. Greater Greenville contends that the purpose of the warranty deed was merely to effectuate the conveyance agreed upon by the parties to that contract. Because that contract did not include the four additional properties, Greater Greenville contends that the warranty deed should be reformed to exclude them to correct this "mutual mistake."

¶35. Emery, on the other hand, asserts that the option to purchase was not a final and binding contract for sale, and thus the issue is not one of contract modification, but rather one of deed interpretation. According to Emery, there was no "mutual mistake" in the warranty deed's legal descriptions because after viewing the properties, both parties agreed to include the original six properties and the four additional properties in the sale, as corroborated by the following statements in Spencer's affidavit, Greater Greenville's executive director at the time of the sale:

6. [A]ll of the properties described in the deed, including 542 South Hinds Street, 509 Roach Street, 511 Roach Street, and 427 Wright Street, were intended to be included in the sale. As the agent for the company, I, personally, was aware of the inclusion of these properties in the sale.

. . . .

8. Accordingly, when I signed the deed on April 18, 2011, it was the intent of Greater Greenville Housing and Revitalization Association to include all of the properties described in the deed, including 542 South

15

Hinds Street, 509 Roach Street, 511 Roach Street, and 427 Wright Street.

¶36. As further explained in the Spencer affidavit, both parties agreed to include the additional four properties in the sale to assist Emery with the loan he had taken out to purchase the properties and to address the pressure that the City of Greenville was putting on Greater Greenville to revitalize the subject properties, including the four additional properties. As such, Emery contends that there is no "mutual mistake" because the warranty deed that Greater Greenville executed and delivered to him reflects the parties' agreement and correctly identifies all the property conveyed by Greater Greenville to him, including the four additional properties.

¶37. The chancery court held in Greater Greenville's favor on this issue, finding that the relevant contract governing the transaction was the option to purchase, as follows:

> Without a doubt, the contract is the Option to Purchase agreement which is signed by Emery and Spencer. It identifies the consideration, and states the terms of the agreement. Although it is not the most detailed contract and it fails to state how long Emery was given to obtain financing, it is sufficient to show the agreement between Emery and Spencer.[7]

Any modification to that contract, the chancery court found, must likewise be in writing and meet the requirements of a valid contract. The chancery court described the issue before it as follows:

> Although the Warranty Deed is not the contract as Emery argues, based upon the affidavit of Spencer and the argument of Emery, the Warranty Deed, at best, arguably, could have been intended to be the written evidence of Spencer

---

[7] The chancery court added a footnote to its opinion that "[i]t would seem that between March 2, 2011, when the Option to Purchase agreement was signed and April 18, 2011, when the Warranty Deed was signed, Emery obtained financing."

16

and Emery's modification of the Option to Purchase agreement.

Addressing this issue, the chancery court held that the warranty deed was not supported by new consideration so it did not constitute a valid modification to the option. The chancery court further held that any verbal agreement between Emery and Spencer to include the disputed properties in the sale was barred by the statute of frauds. Based on this analysis, the chancery court held that Emery had not shown a colorable defense to Greater Greenville's deed reformation lawsuit. As discussed below, we find that the chancery court's analysis on this issue is based upon an error of law.

¶38. In addressing the findings of the court below, we acknowledge first that the parties in this case did not create a valid option to purchase. "A valid and enforceable option contract requires: (1) an adequate description of the property, (2) consideration, and (3) a date when the option must be exercised." *Prestenbach v. Collins*, 159 So. 3d 531, 533 (¶9) (Miss. 2014). There is no evidence in the record that Emery paid any consideration for the option to purchase the six properties, nor does the option contain a recital that any consideration was paid.[8]

¶39. Second, even if the parties had formed a valid option, an option to purchase is a *unilateral* contract that is binding only on the promissor (Greater Greenville); there is no

---

[8] The option also does not contain a date by which Emery was required to exercise the option if he obtained financing. Where an option to purchase land is contingent upon the purchaser obtaining financing, however, the Mississippi Supreme Court has held that the option-holder may exercise the option within a reasonable time thereafter. *Prestenbach*, 159 So. 3d at 533 (¶10) ("If an option subject to financing does not specify when the sale must take place, the court may decree a reasonable time for performance.") (internal quotation marks omitted). Nevertheless, without valid consideration to support it, the option was never enforceable at all.

obligation on the holder (Emery) to exercise it. An option, in and of itself, is not a mutually enforceable contract for sale. *Clinton Serv. Co. v. Thornton*, 233 Miss. 1, 9-10, 100 So. 2d 863, 866 (1958); *see Prestenbach*, 159 So. 3d at 533 (¶9) (citing cases); *Fairchild v. Bilbo*, 166 So. 3d 601, 605 (¶10) (Miss. Ct. App. 2015). As the Mississippi Supreme Court has explained:

> The doctrine of mutuality is inapplicable to unilateral contracts. If a promissor has received sufficient consideration, his promise is binding, even though the consideration is not a promise. Hence an option supported by a consideration is valid even though the holder is not obligated to exercise it. The essence of an option contract is that it is not mutual. . . . [T]here is neither mutuality of obligation or of remedy in a unilateral contract. Where the promissee had paid a consideration for the option, he has furnished that element necessary to make it binding upon the promissor-optionor.

*Clinton Serv. Co.*, 233 Miss. at 9-10, 100 So. 2d at 866 (citations omitted).

¶40. Further elaborating on this issue, one commentator explains:

> The traditional view regards an option as a unilateral contract which binds the optionee to do nothing, but grants him or her the right to accept or reject the offer in accordance with its terms within the time and in the manner specified in the option. Thus, the optionee has the open discretion to take or to leave the proposal. An option to purchase or to sell is not itself the contract to purchase or to sell . . . . Its outstanding factor is that the optionee is not bound until it acts on the option one way or another.

Richard A. Lord, *Williston on Contracts* § 5:16 (4th ed. 2007).

¶41. Based upon the record and these legal principles established in the precedent, we find that the chancery court erred in determining that Emery had not at least shown a colorable defense that the option to purchase was not a contract for sale governing the transaction in this case.

¶42. Third, under the merger doctrine, "[p]revious negotiations or contracts are merged into

18

a deed of conveyance." *Knight v. McCain*, 531 So. 2d 590, 595 (Miss. 1988) (discussing that the "doctrine of merger is firmly ingrained in Mississippi law"); *see Conservatorship of Estate of Moor ex rel. Moor v. State*, 46 So. 3d 849, 853 (¶13) (Miss. Ct. App. 2010) (finding that the "[warranty] deed extinguished, or merged, the provisions in the prior options contract"). We recognize that Greater Greenville's claim of mutual mistake is an exception to the merger doctrine, *see, e.g.*, *Penfield v. Cook*, 355 So. 2d 1104, 1105-06 (Miss. 1978), but this appeal only concerns the viability of Emery's defense in the context of a default judgment. As such, we do not address the merits of this case "other than to point out that in the interest of protecting the need for certainty in land transactions, [the Mississippi Supreme Court has] long held a complainant, upon allegations of mutual mistake, to the heavy burden of proof beyond a reasonable doubt." *Id.* at 1106; *see Elchos v. Haas*, 178 So. 3d 1183, 1192 (¶25) (Miss. 2015).

¶43.    As addressed above, Emery only needs to show on appeal that he has a "colorable defense" to Greater Greenville's mutual mistake allegations, which "need not be compelling, [or] be proven to trial standards," *Tucker*, 198 So. 3d at 312 (¶35), and may even be "of questionable strength" to pass muster. *Id.* In this case, Emery asserts that the warranty deed controls, and the four additional properties were not included by "mutual mistake," which requires Greater Greenville to show, beyond a reasonable doubt, that there has been "[a] mistake that is shared and relied on by *both parties* to a contract." *Elchos*, 178 So. 3d at 1192 (¶25) (quoting Black's Law Dictionary (10th ed. 2014)).

¶44.    As to the principles governing the deed's interpretation, Emery asserts that "[d]eed

disputes are examined under principles analogous to contracts," *id.* at 1191 (¶24), and "a person is charged with knowing the contents of any document that he executes." *Andrus v. Ellis*, 887 So. 2d 175, 180 (¶28) (Miss. 2004) (quoting *Russell v. Performance Toyota, Inc.*, 826 So. 2d 719, 725 (¶28) (Miss. 2002)). From this, Emery asserts that, as the grantor, Greater Greenville had the duty "to learn and know [the deed's] contents before [it] sign[ed] and deliver[ed] it." *Alliance Trust Co. v. Armstrong*, 185 Miss. 148, 163, 186 So. 633, 635 (1939). According to Emery, Greater Greenville's failure to read and understand the warranty deed before executing and delivering it negates its attempt to reform the warranty deed based upon mutual mistake.

¶45. Applying the "colorable defense" standard and the legal principles discussed above, we find that Emery has shown that he possesses a colorable defense that the warranty deed, rather than the option to purchase, controls in determining what property was conveyed to him, and that the four additional properties in the deed's legal descriptions were not included due to "mutual mistake." The chancery court's determination to the contrary was based on an error of law.

¶46. We acknowledge Greater Greenville's assertions that after the properties were conveyed to Emery, he may have acted inconsistently with his belief that he owned the four additional properties. For example, Emery does not dispute that after the sale, Greater Greenville continued to collect rent from the tenants living in the four additional properties. The record also shows that Greater Greenville alleges it paid insurance on the four additional homes and performed maintenance and made improvements to these homes. According to

20

Greater Greenville, these actions were done without comment or interference by Emery.[9] We also acknowledge, however, that the record shows that Emery paid the property taxes on the four additional properties in 2012 and 2013, after the sale, though he did not pay the property taxes on these properties in 2014 or 2015. In any event, as addressed above, we are not here to address the merits of this lawsuit, but rather we are to determine whether the chancery court erred in determining that Emery failed to show that he had a "colorable defense" to Greater Greenville's reformation lawsuit. For the reasons addressed above, we find that Emery has shown a colorable defense, and we therefore reverse the chancery court judgment on this issue.

### C. *Prejudice to Greater Greenville*

¶47. We find no abuse of discretion in the chancery court's determination that Greater

---

[9] Greater Greenville relies on *Kelly v. Barry*, 115 So. 3d 131 (Miss. Ct. App. 2013) in asserting that these facts also demonstrate that Emery has no colorable defense to Greater Greenville's deed reformation lawsuit. In *Kelly*, the deed at issue mistakenly contained language in the legal description that conveyed property encompassing two separate homes from Barry to Kelly, when Barry only intended to convey one home. *Id.* at 133 (¶5). After the transaction, Barry renovated the second property, and paid all of the utilities, taxes, and insurance premiums on that property. *Id.* at 132 (¶4). Barry sought to reform the deed when he discovered the error in the legal description. *Id.* at 133 (¶6).

Though the chancery court ordered reformation of the deed at issue in *Kelly*, it was after a trial on the merits. *Id.* at 133 (¶¶8-9). This factor alone distinguishes *Kelly* from the case here, where, as addressed above, this Court's role is to assess only whether Emery has shown a colorable defense to set aside a default judgment under an entirely different legal standard. *Tucker*, 198 So. 3d at 312 (¶35) (A defense "need not be compelling, [or] be proven to trial standards . . . in order to qualify as a 'colorable defense.'"). Further, even on the record before us, *Kelly* is factually distinguishable. Unlike Emery, Kelly had no evidence, other than her own testimony, that the parties intended to convey both properties, and Kelly had collected rent from the tenants in the other property and turned that rent over to Barry. *Id.* at 135 (¶16).

Greenville will not suffer the type of prejudice contemplated by the "prejudice" prong under the Rule 60(b) balancing test. As the chancery court determined, the entry of default was filed two days after the answer was due, and the default judgment was entered one week after the answer was due. A little more than three weeks later, Emery's counsel entered an appearance by filing the motion to set aside the default judgment. Thus, Emery entered an appearance approximately one month late.

¶48. As the chancery court found, Greater Greenville did not show any prejudice it suffered as a result of the delay. Instead, Greater Greenville argued that it would suffer prejudice if the default judgment were set aside because after obtaining the default judgment it made changes regarding the property's tax classification and the indebtedness on the disputed property, and because it has paid the delinquent taxes. In making these changes, Greater Greenville incurred expenses. "[P]rejudice[, however,] does not result from 'the loss of rights that were obtainable only by default.'" *BB Buggies, Inc.*, 150 So. 3d at 104 (¶31) (quoting *In re Estates of Gates*, 876 So. 2d 1059, 1065 (¶18) (Miss. Ct. App. 2004)). Based upon the record and the applicable law, we find that the chancery court did not abuse its discretion in determining that there was no prejudice to Greater Greenville under the "prejudice" prong of the Rule 60(b) balancing test.

¶49. In conclusion, though Emery did not show good cause for his default, an application of the law to this case requires that the default judgment be set aside because we find that Emery has shown he has a colorable defense under the applicable law, and Greater Greenville will not suffer prejudice as that term is used in the Rule 55(c) and 60(b) balancing

22

test context.[10]  We reverse the chancery court's judgment and remand this case for further proceedings consistent with this opinion.

¶50.    **REVERSED AND REMANDED.**

**LEE, C.J., IRVING AND GRIFFIS, P.JJ., BARNES, FAIR, WILSON, WESTBROOKS AND TINDELL, JJ., CONCUR.  GREENLEE, J., CONCURS IN PART AND IN THE RESULT WITHOUT SEPARATE WRITTEN OPINION.**

---

[10] *BB Buggies, Inc.*, 150 So. 3d at 102 (¶24) ("[L]ack of good cause alone will not prevent the Court from setting aside a default judgment if the other two factors weigh in favor of setting it aside.").